PUGET MILL CO. v. BROWN et al.

(Circuit Court, N. D. Washington. January 5, 1893.)

1. PUBLIC LANDS—DECISIONS OF THE LAND OFFICE—WHEN CONCLUSIVE.
　Decisions by the secretary of the interior and his subordinates on questions of fact arising in the administration of the land office are conclusive upon the courts when made in the performance of their official duties, no fraud being shown; but such decisions, to be valid, must be made according to the usual and regular rules of practice in the department, and

must be based on legal evidence, or upon some formal inquiry or trial at which the parties have a fair opportunity of presenting evidence to support the claims or rights which they assert.

**2. SAME—EVIDENCE—SOLDIERS' ADDITIONAL HOMESTEAD ENTRIES.**

The record of the general land office, showing that an additional homestead entry under sections 2304, 2306, in the name of a soldier's widow, was allowed at a district land office, upon the filing of the necessary formal papers and presentation of a paper purporting to be a power of attorney, executed by such widow, authorizing the entry, and that more than 10 years afterwards the commissioner of the general land office canceled said entry for fraud, without giving the party interested a formal hearing, and without proof of fraud other than an unauthenticated letter from a person assuming to be the one who made the original homestead entry, contradicting the statements in the additional homestead entry papers, is not conclusive, nor sufficient evidence of the illegality of such additional entry.

**3. SAME—INVALID TRANSFER.**

Where such a power of attorney shows on its face that the alleged applicant had already parted with all her beneficial interest, a claimant of the land who admits that he purchased "scrip" therefor, and who does not offer to prove that it was different from the ordinary "Soldier's Additional Homestead Scrip," will be presumed to have known either that the power of attorney divested its maker of all beneficial interest before the entry was made, or that, at the time it left the possession and control of its maker, it was a mere blank, and that by subsequently filling the blanks, so as to make it appear valid, a forgery was committed; hence a deed from the attorney pursuant to the sale was not such an attempted transfer by a bona fide instrument in writing as would entitle the grantee to make a cash entry under 21 St. at Large, p. 238, § 2, though such entry was sanctioned in advance by the commissioner of the general land office.

In Equity. Suit by the Puget Mill Company, a corporation, against Thomas H. Brown, to determine conflicting claims, under the laws relating to the public lands, to a tract of land to which said Brown holds the legal title by a patent issued by the United States, and for a decree declaring that he holds said title in trust for the plaintiff, and against J. H. Irvine and O. B. McFaden, for an injunction to restrain the cutting of timber on said land. Decree that the bill be dismissed.

Hughes, Hastings & Stedman, for complainant.
Stratton, Lewis & Gilman, for defendants.

HANFORD, District Judge. The original bill of complaint in this case shows that the plaintiff and the defendant Brown each claim a certain tract of land in Snohomish county, in this state, by virtue of entries and purchases thereof made by each, respectively, under the laws of the United States providing for the sale and disposition of public lands, and prays for an injunction to prevent the defendants Irvine and McFadden from removing timber from said tract, which they were about to do under a contract with the defendant Brown. By a supplemental bill, it is shown that, since the commencement of this suit, the government has, by a patent, conveyed the legal title to said tract to the defendant Brown, and the complainant now asks the court to decree that it has a superior right to said land, by virtue of its purchase of an earlier date than the entry and purchase made by said Brown, and that by said patent the title became vested in him, as a trustee,

for the use and benefit of the complainant. The parties have made up and filed an agreed statement of facts, upon which the case has been submitted. The plaintiff's claim of title is based upon a cash entry made at Olympia land office February 10, 1885, pursuant to the second section of the act of congress entitled "An act relating to the public lands of the United States," approved June 15, 1880, (21 St. U. S. p. 238, § 2,) which reads as follows:

"That persons who have heretofore, under any of the homestead laws, entered land properly subject to such entry, or persons to whom the right of those having so entered for homesteads may have been attempted to be transferred by bona fide instruments in writing, may entitle themselves to said lands by paying the government price therefor, and in no case less than one dollar and twenty-five cents per acre; and the amount heretofore paid the government upon said lands shall be taken as part payment of said price: provided, this shall in no wise interfere with the rights or claims of others who may have subsequently entered such lands under the homestead laws."

As this law by its terms only authorizes entries to be made for the purpose of perfecting titles of persons who had previously claimed the same land under the homestead laws, or the assignees of such claimants to whom the rights of homestead claimants had been previously conveyed bona fide, by instruments in writing, it becomes necessary to consider the prior proceedings in the land office, and what, if any, rights the complainant had sought to acquire to the land in question by an entry under the homestead laws. By the statement of facts it appears that an entry of the tract was made at the Olympia land office in the name of Susan King, in the month of January, 1876, as a soldier's additional homestead, under sections 2304, 2306, Rev. St. The latter section provides that "every person entitled, under the provisions of section twenty-three hundred and four, to enter a homestead, who may have heretofore entered, under the homestead laws, a quantity of land less than one hundred and sixty acres, shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres."

The practice in the land offices of the United States during and prior to the year 1876 permitted parties to select additional lands in any part of the country, and without appearing in person at the land office to make their entries; that is to say, parties were permitted to appear by authorized attorneys, and file their applications and the affidavits and proofs required. Taking advantage of this liberal mode of making additional entries under this law, attempted transfers of soldiers' additional homestead rights became common, although such rights are not by the laws made assignable. The traffic was facilitated and carried on by means of sets of papers known to the trade as "Soldiers' Additional Homestead Scrip," consisting of (1) an affidavit stating briefly the facts essential to entitle the affiant to make an additional entry, and, further, that the entry is made for the affiant's "own exclusive benefit, and not directly or indirectly for the benefit or use of any other person or persons whomsoever;" (2) an application to make an additional entry, signed by the applicant, but having blank spaces to be

filled by inserting the date, name of the land office, and description of the land to be entered; (3) a land-office certificate, showing the original homestead entry of the applicant; (4) in case of the supposed applicant being a widow, other affidavits showing her marriage to a soldier, and the fact and date of his death; (5) an irrevocable power of attorney to make the additional entry, sell and convey the land, and appropriate the purchase money, completely executed, witnessed, acknowledged, and certified, but having blanks wherein to insert the name of the attorney in fact and description of the land.

To effect the entry made in the case of Susan King, aforesaid, papers of the above description were filed in the land office, except the power of attorney, which was exhibited there, but not filed. The plaintiff bargained with some person, (not named,) who held said papers, and claimed to be acting for said Susan King, "to purchase the same, and the right of the said Susan King thereunder, and pay therefor, upon the entry of said land and the execution of the deed to plaintiff therefor, the sum of five hundred dollars." The parties have not seen fit in their statement of facts to mention the date of this agreement, nor to give the court any information as to when this land was selected for entry by means of said papers, nor by whom, nor when or by whom the description thereof was written in the papers which were bargained for. The papers appear to be regular and sufficient for the purpose intended, except for one defect, viz. the irrevocable power of attorney showed upon its face that, in consideration of $500 paid to her, the ostensible applicant had previously parted with all her beneficial interest in the land. In June, 1876, a paper, purporting to be a deed conveying said tract from Susan King to the plaintiff, was executed and delivered by W. D. Scott, the attorney in fact named in said power of attorney. It is now claimed by the plaintiff that an attempt was made bona fide, by said instrument in writing, to transfer the rights of the Susan King, who made an original entry for a homestead of a tract less than 160 acres, in and to the land in controversy, under the entry made at Olympia in January, 1876, as an additional homestead, which she claimed the right to make as the widow of a deceased soldier.

On the 16th of January, 1885, N. C. McFarland, the then commissioner of the general land office, acting upon information contained in a letter from the assistant adjutant general of the United States army as to the military record of Joseph S. or Joshua S. King, whose widow was supposed to be the Susan King, in whose name the said additional homestead entry was made, and other information contained in a letter purporting to have been written by a Mrs. Susan King, alleging herself to be the person who made the original homestead entry referred to in the set of papers filed in the Olympia land office, and that her husband's name was John Wesley King, and that he did not serve in the United States army during the Civil War, made an order holding said additional homestead entry for cancellation, and allowing the parties interested 60 days from the receipt of notice of said order within which to

show cause why the said entry should not be canceled, or make an application to purchase the land under the said act of June 15, 1880.

The plaintiff elected to take advantage of the option offered by the commissioner's said order, and accordingly did, on the 10th day of February, 1885, make application at said land office, under said act, and paid the government price for the land. More than two years afterwards, the successor in office of said commissioner of the general land office, without affording an opportunity to the complainant to defend its claim concerning the validity of said entry, and without any inquiry as to the facts or evidence of fraud, other than what appeared by the papers on file hereinbefore specified, including the official letter of the assistant adjutant general of the army and the letter supposed to have been written by a person bearing the name of Mrs. Susan King, made an order canceling said entry, alleging as the reason for making said order that said entry was "fraudulent or illegal." From said order an appeal was taken to the secretary of the interior, and, upon consideration thereof, W. L. Muldrow, acting secretary of the interior, on September 8, 1888, made an order and decision affirming the order of the commissioner cancelling said entry. This order and decision of the acting secretary assumed that the cash entry made by the complainant was fraudulent and invalid, because the prior additional entry of the same land was based upon fraud and perjury.

The defendant Brown filed a declaratory statement as a settler upon said land under the pre-emption law, June 24, 1890, and made final proof and payment on the 24th day of March, 1891, and a patent conveying the said land to him was issued February 18, 1892, pursuant to his said declaratory statement and final proof.

The secretary of the interior and his subordinate officers in the general land office are clothed with certain powers and functions constituting them a special tribunal for the hearing of evidence and determination of questions arising in the administration of the laws providing for the sale and disposition of public lands; and, without a showing of fraud, the decisions of said tribunal as to questions of fact made in the performance of their official duties are treated by the courts as conclusive. But the decisions of said tribunal, to have any force, must be made in the due performance of official duties, and in accordance with the usual and regular rules of practice or usage in the department, and must be based upon legal evidence, or upon some formal inquiry or trial at which the parties to be affected have a fair opportunity of presenting evidence to support the claims or rights which they assert. The grounds of the decision of the acting secretary of the interior upon the appeal taken by the complainant from the order of the acting commissioner of the general land office, so far as shown by the record, are fully stated in the following extract from the decision itself:

"Cash entry No. 9,194 covered soldier's additional homestead entry No. 2,410, made in the name of Susan King, widow of Joseph S. King, January 26, 1876. Your office decided January 16, 1885, that entry No. 2,410 was held for cancellation as illegal and fraudulent, for the reason that 'Susan King, who made

the original homestead entry upon which said additional homestead entry is based, informed your office in a letter dated December 27, 1884, that her deceased husband was not named Joshua S. King, but was named John Wesley King, and that he never served in the United States army during the recent Rebellion.'

"By your said office decision, the parties were allowed to show cause within sixty days from notice why the entry should not be canceled, or to file in the local land office an application to purchase the land under the act of June 15, 1880, the same as in the other additional entries hereinbefore mentioned and described. A deed is attached to the papers of the said cash entry, by which it appears that a person naming herself Susan King conveyed the land covered by the said entry to the appellant June 15, 1876; and the latter made cash entry for the said land February 10, 1885.

"The record shows that the person of the name of Susan King, or assuming such name, made the said additional homestead entry by virtue of the services of one Joseph S. King, of whom she is claimed to be the widow, in the army of the United States, in Company E, third regiment of Arkansas cavalry volunteers.

"The party made affidavit, bearing date September 13, 1875, in which it is set out that she is the widow of Joseph S. King; that the latter served as a soldier in the said company, and was honorably discharged on or about June 30, 1865, after serving more than 90 days. Affiant further alleged that she was married to said Joseph S. King on July 15, 1855, who died August 30, 1866. Attached to the entry certificate is a certificate from the assistant adjutant general that one Josiah King was enrolled on October 15, 1863, in Company E, third regiment of Arkansas cavalry volunteers, mustered into service November 19. 1863, to serve three years; that on the muster roll of said company for the months of November and December, 1863, he was reported as Joseph S. King, and was so borne on all subsequent rolls; that he was mustered out with said company at Lewisburg, Ark., June 30, 1865. Attached to the papers is also a letter, signed by Susan King, dated December 27, 1884, addressed to the general land office, reading as follows: 'In reply to yours of the 2nd instant, would say that I homesteaded N. W. of S. E. Sec. 7, T. 9 N., R. 22 W., Johnson county, Arkansas, containing forty acres, as the deed from the land office at Washington City, as well as the county records, will show. My husband, John Wesley King, did not serve in the United States army during the late war.' The land described in the letter is the land covered by the original homestead entry, upon which the additional entry was based. * * *

"In the case of entry No. 9,194, based on additional entry made in the name of King, it is shown by the records of the department of war and the letter of the genuine Susan King that the application for the additional homestead was founded on fraud and perjury. The signature 'Susan King,' appearing in the affidavit for the additional entry, and the signature of Susan King in the letter, appear not to be in the same handwriting.

"The question of the validity of these five cash entries is controlled by decision in the Case of J. S. Cone, 7 Dec. Dep. Int. 94. It was there decided that the second section of the act of June 15, 1880, (21 St. p. 238,) should not be construed to permit an entryman, or his attempted transferee, to purchase land covered by an entry which depends for its inceptive right upon false and fraudulent statements and forged documents. This opinion is still adhered to."

From the record it appears that there was no pretense of anything resembling a formal inquiry into the actual facts of the transaction, no taking of proofs, no distinct findings of any facts upon which the conclusion that the additional homestead entry was fraudulent could be founded, and there was no legal evidence before the acting secretary to support such findings. If it be claimed that the charge of fraud was in effect confessed on the part of the complainant by having declined to maintain the validity of the additional homestead entry in a contest with the government, a good answer to

such claim is to be found in the fact that, instead of making default after a fair notice or summons to show cause, or in any manner declining to take issue upon an allegation of fraud, the complainant responded to the notice contained in the order of Commissioner McFarland, by electing to pay the government price for the land and make a second entry. The commissioner, by the only notice ever given affording an opportunity to support by evidence the validity of the additional homestead entry, also gave an option to terminate the controversy in a less expensive and more expeditious way. Therefore no admission can be fairly inferred from the mere fact that the better way suggested by the commissioner was chosen. The acting secretary, by his decision, treats the unsworn statements contained in the unauthenticated letter purporting to have been written by a Mrs. Susan King, in an apparently different handwriting from that of the signatures upon the papers filed in making the additional homestead entry, years subsequent to the execution of a deed purporting to be a conveyance of the land by the individual in whose name the entry was made, as being sufficient, without evidence to identify the writer as the real Susan King who made the original homestead entry, to establish the falsity of the statements in the application and affidavits upon which the additional homestead entry was made.

If, in the determination of the issues between the parties now contending for the land, the scope of the inquiry is so limited that the court can only review the decision of the acting secretary in the light of the facts appearing by the record of the case in the general land office, then the plaintiff ought to prevail. But there is evidence before the court, not found in the general land office, to be considered, and the conscience of the chancellor must be satisfied that the complainant has a superior right, according to the principles of equity, before the court can, in the exercise of the extraordinary powers of a court of equity, decree a transfer of the title from the defendant, in whom it is now vested. Now, by the agreed statement of facts before me it appears that the complainant did not deal directly with Susan King; and, giving to its officers and agents credit for the sagacity and prudence of business men of ordinary intelligence, there appears to be no theory consistent with the facts which can lead to a conclusion that there was any bona fide attempt to transfer any right to the land which the parties could reasonably have supposed to have been acquired by the additional homestead entry. An attempt to convey a title cannot be bona fide on the part of the vendee unless in making the purchase he acts with reasonable prudence, and under an honest belief that the vendor has the right to convey the title to him. Now, I find annexed to the statement of facts the original instrument, purporting to be a power of attorney from Susan King to W. D. Scott, under which the deed to plaintiff was executed by Scott. By the date of its execution and acknowledgment, in connection with the admitted fact that the complainant's bargain was for "scrip," (so called,) and that it paid the purchase money to a stranger, and the further fact that upon the present trial the complainant has not

offered to prove that the so-called "scrip" which it bargained for was different in character from the sets of blanks which were commonly sold and traded in by dealers, and by them called "Soldier's Additional Homestead Scrip," the inference is justified that the complainant, at the time of its purchase, either knew, or ought to have known, that said power of attorney either divested the maker of it of all her beneficial interest in the land some four months prior to the additional entry in the land office at Olympia, and therefore falsified the statements of the application and affidavits whereby the entry was made, or that, at the time when it left the possession and control of its maker, said power of attorney was a mere blank, utterly void, and that by subsequently filling the blanks, so as to make it appear to be complete and valid, a forgery was committed.

My conclusions are that the attempted transfer of rights acquired under the homestead laws to the complainant was not bona fide; that the cash entry was therefore not authorized by the act of June 15, 1880; and that no rights adverse to the government can be acquired by an entry not authorized by law, even though sanctioned in advance by a commissioner of the general land office. The defendants are entitled to have the suit dismissed.

Decree accordingly.