STIMSON LAND CO. v. RAWSON et al.

(Circuit Court, D. Washington, N. D. July 5, 1894.)

No. 156.

1. PUBLIC LANDS—ANNULMENT OF ENTRY—LAND OFFICE.
  A decision by an officer of the executive branch of the government, canceling an entry after it has been allowed and the land paid for, and before the legal title has passed from the government, is not binding on the courts if supported only by a general conclusion that fraud has been committed, and that the entry was not made in good faith, with intent on the part of the entryman to take the land for his exclusive use and benefit.

2. SAME—SUIT TO DETERMINE ADVERSE CLAIMS.
  In a suit to determine adverse claims to lands conveyed to defendant by patents from the United States, to entitle complainant to a decree equiva-

lent to a conveyance of title, as prayed for in his bill, the validity of the entries on which his claim is founded must be established by affirmative evidence; and an answer by defendant denying the validity of such entries, and alleging their cancellation and a subsequent entry by defendant, and issuance of a patent thereon, may be treated as a negative plea, denying the equities of the bill.

This was a suit by the Stimson Land Company, a corporation, against Alonzo Rawson, Jr., and others, for the purpose of determining adverse claims to the title to lands conveyed by patents from the United States. Complainant filed exceptions to the defendants' answer.

C. K. Jenner, for complainant.
John B. Allen, for defendants.

HANFORD, District Judge. The case, as stated in the brief filed in behalf of the complainant, is as follows:

"The bill of complaint, as amended, alleges that said plaintiff is the owner of the lands described therein, deraigning title thereto from the government of the United States, through the pre-emption entry of one Charles M. Park, and the timber-land entry of one James D. Hannegan; alleging in said bill of complaint that at the date of said entries, and prior thereto, the land entered under said pre-emption entry was surveyed public lands of the United States of America, and subject to entry and purchase, under section 2259 of the Revised Statutes of the United States; that said land was then and there of the class and character subject to entry and purchase under the pre-emption laws of the United States; that on the 12th day of July, A. D. 1884, said Charles M. Park, having theretofore complied with all the requirements contained in the Revised Statutes of the United States regarding the entry of public lands and acquiring title to the same under said pre-emption laws, so as to enable him to pay for said land and claim a patent from the United States therefor, did on said 12th day of July, 1884, at the United States land office, in Olympia, Washington Territory, purchase said lands from the United States, and pay to the receiver of said land office the sum of two hundred (200) dollars in lawful money of the United States, said sum being the purchase price for said lands fixed by law; that, upon the payment of said sum, said receiver then and there made, executed, and delivered to said Charles M. Park a certificate or a receipt therefor, a copy of which is set forth in said bill. Said bill also alleges that on the 3d day of July, A. D. 1884, one James D. Hannegan, having theretofore complied with all the requirements contained in the act of congress of June 3, 1878, entitled 'An act for the sale of timber lands in the states of California, Oregon, Nevada, and in Washington Territory,' so as to enable him to pay for the lands described therein and claim a patent from the United States therefor, did on said day, at the United States land office, in Olympia, Washington Territory, purchase said lands from the United States, and paid to the receiver of said land office the sum of four hundred (400) dollars in lawful money of the United States, that sum being the purchase price for said lands; and that, upon the payment of the said sum, said receiver then and there made, executed, and delivered to said James D. Hannegan a certificate or receipt therefor, a copy of which is set forth in said bill."

A demurrer to said amended bill of complaint has been considered and overruled, and the defendants have answered, denying the equities of the bill; that is to say, they deny that the grantors of the complainant ever complied with the laws of the United States, so as to become entitled to the lands in dispute, and deny that, by any fraudulent or unfair means, any agent of the land department of the United States procured or caused false testi-

mony to be taken, whereby the decision of the land department as to the validity of the several entries' made, as alleged in the complaint, was in any manner affected. And, as a further defense, the answer alleges affirmatively that pre-emption cash entry No. 8,707, by Charles M. Park, was made by said Park fraudulently, with intent to cheat and wrong the government of the United States, and not in good faith to appropriate the land embraced in said entry to his own exclusive use and benefit; that after said entry in the local land office, upon testimony taken before the register and receiver of the land office for the district in which the land is situated, after due notice to said Park and to his vendees, through whom the complainant deraigns title, and upon a hearing before the commissioner of the general land office, it was found and determined by the said commissioner that the said entry was fraudulently made by said Park, and not made in good faith, to appropriate said land to his own exclusive use and benefit; and that, upon an appeal taken from said decision by the plaintiff's grantors, the secretary of the interior affirmed said decision; and afterwards, pursuant to the order and direction of the commissioner of the general land office, said entry was canceled, and the land declared to be open for settlement and entry, under the public land laws of the United States. The answer also contains similar averments with reference to the timber-land entry alleged to have been made by James D. Hannegan; and it is further averred that, after the cancellation of said entries, Alonzo Rawson, Jr., took said land as a homestead, and, by full compliance with the laws of the United States, acquired a perfect right to said land, and to have a patent therefor, and thereafter a patent was duly issued, whereby the United States granted and conveyed said land to him; and afterwards, by warranty deed, said Alonzo Rawson, Jr., did sell convey, and warrant the said land to the defendant Howard E. Henderson, who is a bona fide purchaser.

Counsel for the complainant contends that, notwithstanding the denials and averments of this answer, the equities of the bill are admitted, and that a decree should be rendered in the complainant's favor, declaring the complainant to be the true equitable owner of the land, by reason of the prior entries made by its grantors, and the failure of the defendants to show that said prior entries have been invalidated by any decision or adjudication of any court or tribunal having lawful authority and jurisdiction to vacate or set aside entries which have been allowed in the local land office, for causes not appearing upon the face of the record in the land office.

The decisions of the supreme court of the United States establish the following propositions: When land has been sold by the United States, and the purchase money paid, it becomes segregated from the body of the public lands, and is no longer the property of the government, but is the property of the purchaser. Carroll v. Safford, 3 How. 460; Witherspoon v. Duncan, 4 Wall. 210; Wirth v. Branson, 98 U. S. 118; Simmons v. Wagner, 101 U. S. 260. After a sale, until the patent is issued, the government holds the mere legal

title in trust for the purchaser; and, in case of a resale, the second purchaser would take the title charged with the trust. Carroll v. Safford, supra; Lindsey v. Hawes, 2 Black, 554. When the right to a patent becomes perfect, the full equitable title passes to the purchaser, with all the benefits, immunities, and burdens of ownership. Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., 145 U. S. 428, 12 Sup. Ct. 877. A contract for the purchase of public land is complete when the certificate of entry has been executed and delivered. Witherspoon v. Duncan, supra. A patent certificate protects the purchaser's rights as fully as a patent. Carroll v. Safford, supra. A vested right to a patent for public land is equivalent to a patent issued. Stark v. Starrs, 6 Wall. 402. The execution and delivery of a patent after the right to it has become complete are mere ministerial acts of the officers charged with that duty. Simmons v. Wagner, supra. Officers of the land department of the government are agents of the law. They cannot act beyond its provisions, nor make any disposition of land not sanctioned by law. Cunningham v. Ashley, 14 How. 377. A patent obtained fraudulently or unlawfully cannot be annulled by an officer of the executive branch of the government (U. S. v. Stone, 2 Wall. 525; Moore v. Robbins, 96 U. S. 530), and the same principle protects a grantee of public land by an act of congress, after his rights have been passed upon, and a record made in the general land office showing that, by full compliance with the requirements of the act, the grant has taken effect, and the granted land has been identified and segregated from the body of the public domain (Noble v. Railroad Co., 147 U. S. 165, 13 Sup. Ct. 271). When the government seeks the aid of a court of competent jurisdiction to set aside a patent obtained by fraud, the general principles of equity must be applied. In such a case the government must allege and prove specifically facts sufficient to invalidate the patent, and the patentee is entitled to protection to the same extent as the holder of a conveyance of title from an individual. Maxwell Land-Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015; U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850; U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. 575. These rules, if not modified by other principles applicable to the facts of a particular case, lead to the conclusion that when a sale or entry of public land which is at the time subject to such sale or entry, has been perfected, and a patent certificate issued, and no irregularity appears on the face of the land-office record, the purchaser or entryman acquires a vested interest in the land as owner, and the sale or entry cannot be canceled, nor can the land be restored to the public domain, without proceeding according to the course of equity in a court of competent jurisdiction; the person having such a vested interest being protected by the guaranty contained in the fifth and fourteenth amendments to the constitution of the United States.

The decisions also establish the following propositions: The secretary of the interior, as head of the land department, is invested with supervisory power to control the public business relating to public lands, and may set aside any entry, survey, certificate, or decision allowed, made, issued, or rendered by officers or agents of the

government, subordinate to him; and under his direction, and subject to his ultimate determinations, the commissioner of the general land office has like supervising power. Barnard v. Ashley, 18 How. 43; Magwire v. Tyler, 1 Black, 195; Harkness v. Underhill, Id. 316; Snyder v. Sickles, 98 U. S. 203; Buena Vista Co. v. Iowa Falls & S. C. R. Co., 112 U. S. 165, 5 Sup. Ct. 84; Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249; Williams v. U. S., 138 U. S. 514, 11 Sup. Ct. 457; Knight v. Association, 142 U. S. 161, 12 Sup. Ct. 258; McDaid v. Territory, 150 U. S. 209, 14 Sup. Ct. 59; Barden v. Railroad Co., 14 Sup. Ct. 1030. In the exercise of his power to supervise proceedings for securing titles to public lands, the secretary of the interior is not limited by any prescribed forms or rules of procedure. If a fatal defect in the proceedings be discovered, or any new fact sufficient to invalidate an entry be ascertained, and brought to his attention in any manner, instead of allowing the proceedings to become consummated, on applying to a court for relief, he may, by a direct order, at any time before the legal title passes from the government, set aside any such defective proceedings or annul any such unlawful entry. Lee v. Johnson, 116 U. S. 48–52, 6 Sup. Ct. 249; Knight v. Association, 142 U. S. 161–176, 12 Sup. Ct. 258. In proceedings to acquire a title to public land under the laws of the United States, the power of the land department ceases when the last official act necessary to transfer the title to the successful claimant has been performed. U. S. v. Schurz, 102 U. S. 378. The patent is the instrument which, under the land laws, passes the title of the United States. It is the government conveyance. Until the execution and recording of a patent, the fee remains in the United States, and the power of the land department to control proceedings to acquire a title to public land continues. Wilcox v. Jackson, 13 Pet. 498; Gibson v. Chouteau, 13 Wall. 92, 102; U. S. v. Schurz, 102 U. S. 378, 396. Exclusive jurisdiction to ascertain the facts upon which rights of claimants to public lands depend is devolved upon the land department; and the decisions of the secretary as to all questions of fact in these matters are conclusive upon the parties, and binding upon the courts, unless vitiated by fraud or imposition. The courts cannot interfere with the title of a patentee upon the ground of a mistake or error of the officers of the land department in drawing wrong conclusions from testimony. Johnson v. Towsley, 13 Wall. 72; Shepley v. Cowan, 91 U. S. 330, 340; Moore v. Robbins, 96 U. S. 530, 535; Marquez v. Frisbie, 101 U. S. 473, 476; Quinby v. Conlan, 104 U. S. 420, 426; Smelting Co. v. Kemp, Id. 636, 640; Steel v. Refining Co., 106 U. S. 447, 450, 1 Sup. Ct. 389; Baldwin v. Stark, 107 U. S. 463, 465, 2 Sup. Ct. 473; Lee v. Johnson, 116 U. S. 48–51, 6 Sup. Ct. 249; Barden v. Railroad Co., supra.

These decisions logically lead to the conclusion that after a person has made an entry of public land under a law authorizing the same, and completed on his part all that the law requires him to do to perfect his right, the commissioner of the general land office or the secretary may receive and consider additional evidence, and if, from such evidence, said officers erroneously make findings adverse to the claimant as to a material fact, he may be defeated, and left

remediless.  These two conclusions, drawn from the decisions of the supreme court, are the basis for the opposing contentions of the parties to this suit.  In making a decision, therefore, the court must assume the apparently difficult task of reconciling the decisions, and deducing from all of them a just rule applicable to the case in hand.  After making allowance for the distinguishing facts of each case, I think all the decisions cited may be reconciled with Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, in which the supreme court, by Mr. Justice Field, pronounces as follows:

"The power of supervision possessed by the commissioner of the general land office over the acts of the registers and receivers of the local land offices in the disposition of the public lands authorizes him to correct and annul entries of land allowed by them. * * * But the power of supervision and correction is not an unlimited or an arbitrary power.  It can be exerted only when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for."

From this and the other decisions cited, I think the following may be fairly deduced as a general rule:  After an entry has been allowed, and the land paid for, and before the legal title has passed from the government, the secretary of the interior still has power to annul the same, if it be in fact an unlawful entry, for reasons appearing on the face of the record, as made up and certified in the local land office, or otherwise, and to determine finally all questions of fact involved in the case; but the general principles of equity must govern the actions of every officer and department of the government affecting private rights, and it is essential to the valid exercise of such power for any cause arising from facts not shown by the record of the proceedings prior to the issuance of the patent certificate that notice and an opportunity to rebut any new evidence shall be given to the party in interest, and the secretary or commissioner must make of record findings of specific facts contradicting the evidence upon which the entry was allowed in a material point. Stimson v. Clarke, 45 Fed. 760; Lewis v. Shaw, 57 Fed. 516.  A decision by an officer of the executive branch of the government pronouncing a forfeiture of private property cannot be binding upon the courts if supported only by a general conclusion, as in this case, that fraud has been committed, and that an entry of public land was not made in good faith, with intent on the part of the entryman to take the land for his exclusive use and benefit.  Tested by this rule, the action of the land department in canceling the entries of Park and Hannegan, as set forth in the affirmative plea contained in this answer, was unauthorized and unlawful.  To this extent I agree with counsel for the complainant; but I consider his position untenable in so far as he claims that the denials of averments of the bill fail to raise a material issue.  The patent to Rawson is valid as a conveyance of the legal title, and gives to the holder a status as a party in interest and successor to the rights of the government, entitling him to contest a claim to the land, by whomsoever asserted. The answer and the patent certainly support each other, and would overcome the prima facie case in favor of the complainant, made by the issuance of patent certificates to its grantors, even had there

been no attempt to cancel said certificates.    To prevail in a contro-
versy with the holder of a patent, the complainant must aver and
prove every fact necessary to make out a perfect case, and establish
actual ownership by an equitable title superior to the legal title.
Lee v. Johnson, supra; Mill Co. v. Brown, 54 Fed. 987; Id., 59 Fed.
35, 7 C. C. A. 643.    Sections 2450 and 2451 of the Revised Statutes
provide that the commissioner of the general land office shall decide
all cases of suspended entries of public lands upon principles of
equity, and in accordance with regulations to be prescribed by the
secretary of the treasury, the attorney general, and the commissioner
of the general land office, and to adjudge in what cases patents shall
issue, and that every such adjudication shall be approved by the
secretary of the treasury and the attorney general, acting as a board,
and shall operate to divest the United States of title, without preju-
dice to the rights of conflicting claimants.    It may be that the com-
missioner is bound by this statute to submit his decisions for ap-
proval to said board, notwithstanding the apparent failure hitherto
of the land department and of the supreme court to give any effect
to its provisions.    If that be true, the most that can be urged in
behalf of the complainant is that the cancellation of the entries
under which it claims title was not a valid exercise of power.    Never-
theless, to obtain a decree which will be equivalent to a conveyance
of title, as prayed for in the bill, the validity of the entries upon
which the claim is founded must be established by affirmative evi-
dence taken in accordance with the rules of the court.    By disre-
garding, as I shall, the decisions of the commissioner of the general
land office, and of the secretary of the interior, affecting the land
in controversy, the complainant will have the full benefit of the last
clause of section 2451; that is to say, said decisions will in fact be
without prejudice to the rights which may be claimed under the
Park and Hannegan entries.    This answer is something of a de-
parture from good form in equity pleading; but I will treat it as a
negative plea, containing averments denying the equities of the bill.
So considered, it is not insufficient, and the exceptions must there-
fore be overruled.