HORSKY, RESPONDENT, *v.* MORAN, APPELLANT.

[Argued September 26, 1892. Decided September 5, 1893.]

JUDGMENT ON THE PLEADINGS—*Adverse possession—Quiet title.*—Plaintiff is not entitled to judgment on the pleadings in an action to quiet title to a fractional piece of land discovered by a later survey to lie between lots, which by the survey under which he purchased were contiguous, where the complaint, while alleging adverse possession of certain land from the time of his purchase, leaves it obscure as to whether such fractional piece was included, and to determine which would require the construction of certain deeds; and the answer, while admitting that the land occupied by plaintiff had been so occupied for more than five years, denied that his possession of the fractional piece was adverse or was taken under the deeds of his predecessors in interest or in any manner except in subordination to the legal title, which was in the probate judge in trust for defendant.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action to quiet title. Judgment on the pleadings in favor of plaintiff was rendered by BUCK, J. Reversed.

Statement of the case by Mr. Justice HARWOOD.

Judgment was rendered in favor of plaintiff on the pleadings, and therefore, first of all, irrespective of the questions of law, we must ascertain from an examination of the allegations of the complaint, and the denials and averments of the answer, whether any material issues of fact are raised by the answer, as contended by appellant, for, if such issues are raised, judgment on the pleadings would not be proper. The complaint and answer are somewhat elaborate, and in quite compact narrative form. Therefore, in order to scrutinize each allegation and denial distinctly, we will set the same down in the order alleged, and number them for reference.

The complaint alleges: 1. That on February 17, 1875, plaintiff acquired ownership and possession of lot 20, block 37, fronting "37 feet, more or less, on Main street," and running back 90 feet, more or less, to and bounded on the east by Jackson street, on the north by lot 21, and on the south by lot 19. 2. That on the 7th of May, 1874, plaintiff became the owner of lot 18, same block, "being 31 feet, more or less, on said Main street," and bounded on the east by Jackson street, on the north by lot 19, and on the south by lot 17. 3. That on the same date (May 7, 1874) plaintiff became the owner and in possession of lot 19, same block, fronting "35 feet, more or less, on said Main street," and bounded on the east by Jackson street, on the north by lot 20, and on the south by lot 18. 4. "That on said last-named date (May 7, 1874) plaintiff also became the owner and possessed of a fractional piece of ground, should the same be so regarded, situate between said lots numbered 19 and 20, in said block, containing 21.05 feet, more or less, on said Main street, and extending back to said Jackson street." 5. That on May 6, 1874, plaintiff became the owner and possessed of lot 17, same block, "being 34 feet, more or less, on said Main street," and bounded on the east by Jackson street, on the north by lot 18, and on the south by lot 16; all of said land being in Helena townsite, Lewis and Clarke county, Montana. 6. "That in truth and reality the said lots owned and possessed by plaintiff and his predecessors in interest comprised 161 feet frontage on Main street, and running back to said

Jackson street, according to the original, established, and recognized boundaries of said lots." 7. "That according to an accurate measurement thereof the said lots exceeded the number of feet designated in the deed therefor by M. F. Truett, then probate judge of the county aforesaid, 21.05 feet; that according to the said lots and boundaries thereof, according to the calls in said deeds from said Truett, as such probate judge, no excess whatever existed; and that the title and possession of plaintiff and his predecessors in interest was acquired and obtained accordingly, and on account whereof the said lots, pieces, or parcels of land, and the dimensions thereof, were governed and controlled by the said boundary line so established and recognized by plaintiff and his predecessors in interest." 8. That immediately upon becoming the owner of said lots plaintiff went into possession of said 161 feet of ground fronting on said Main street, running back, etc., "and ever since, him and his tenants and agents have been in possession of the same." 9. That since, and long prior to, the year 1885 said premises have been inclosed by a good and substantial fence, and houses erected thereon continuously, actually occupied and possessed, as aforesaid. 10. "That the lot, piece, or parcel of land described in the deed hereinafter mentioned to said defendant, and claimed by him, is inside of the inclosure of plaintiff, and is part and portion thereof so inclosed since 1874." 11. "That said defendant, or no other person, except those claiming under plaintiff, and this plaintiff, have been in the seisin or possession of any part of said 161 feet of ground so inclosed as aforesaid." 12. "That for more than five years continuously and uninterruptedly prior to the obtaining by defendant of the deed hereinafter mentioned and the institution of this action, this plaintiff and his tenants, and those claiming under him, have had said premises and that portion thereof so deeded to and claimed by plaintiff, in actual possession, by means of substantial fences and inclosures, and the actual occupation and use thereof have been open, hostile, and notorious, and possession taken under the deeds of the predecessors in interest of this plaintiff." 13. That on August 20, 1873, Robert S. Hamilton, one of the grantors of plaintiff, being then in possession and actual occupation of said lots 18 and

19, in the block aforesaid, by inclosures thereof by substantial fences, according to the established and recognized boundaries thereof, "finding that the same, by actual measurement, exceeded the number of feet called for in the deeds, therefore, and for the purpose of avoiding trouble or contention concerning the same, duly made his application to the probate judge for the entry of said excess of ground according to the actual measurement, for the entry of and deed for the said portion of lots 19 and 18 so designated as a fraction aforesaid; that the same was done while the said Robert S. Hamilton was so in possession and actual occupation of said lots." 14. "That at the time of said application the said Robert S. Hamilton offered to pay and tendered said probate judge the fees and maximum price of said fraction, on account whereof he became and was, in equity and good conscience, the owner of and entitled to a deed to said premises or fraction, if any there be, and all of which was done for the purposes aforesaid, and without any intention of abandoning his title, according to the established and recognized boundaries of said lots 19 and 18." 15. "That this plaintiff, being the grantee of said Robert S. Hamilton, and succeeding to all his rights and equities in the premises, on the 15th of December, 1888, petitioned said probate judge to convey to this plaintiff the said alleged fractional lot so applied for by said Hamilton, and in pursuance of said petition and the application of his grantor, as aforesaid, said probate judge, on the date aforesaid, and while plaintiff was so in the possession and occupation of said premises as such grantee, made, executed, and delivered to plaintiff a deed for said premises." 16. "That notwithstanding the said ownership and possession by him had and held of said lots 17, 18, 19, and 20, and the alleged fractional portion thereof, the said defendant made his petition and application for a portion thereof so in plaintiff's inclosure as aforesaid, and, by his false and fraudulent representations in reference thereto, obtained from said probate judge a deed for a certain lot, piece, or parcel of land so embraced in said inclosure, to wit, said lot numbered 31, in block 37, of the Helena townsite, according to the official survey approved September 12, 1885; that said deed is executed in due form of law, and has been ever since its execution, and

is now, of record in the office of the county clerk and recorder of said county of Lewis and Clarke, state of Montana, and casts a cloud upon the title of plaintiff, greatly to his damage and injury." And upon those allegations plaintiff demands that title to said fraction be adjudged in him, and that defendant's deed therefor be canceled.

The answer to this complaint contains the following denials and affirmations: 1. Denies, on information and belief, that the several lots mentioned in said complaint, of which plaintiff alleges ownership, "as the same exist, and were shown upon the original plat of said townsite in 1874–75, or for more than ten years thereafter, occupied the same position on the earth's surface as the position of the same named lots and block did at the date of the commencement of this action, and as they now occupy." 2. Denies, on information and belief, "that prior to September 12, 1885, the position of the bounding streets named in said complaint, to wit, Jackson street and Main street, were, according to any official survey or plat of said townsite, in the same position on the earth's surface as they have been since September 12, 1885." 3. Denies the allegation that "said defendant, or any other person except those claiming under plaintiff, or said plaintiff, have since 1874 been in the seizure or possession of any part of the 160 feet of ground mentioned in said complaint as being inclosed." 4. Admits that the land occupied by plaintiff herein had been so occupied by plaintiff for a period of more than five years prior to the commencement of this action, but denies that such occupation, in so far as it relates to lot 31, block 37, was open, hostile, or notorious, or was adverse, or could be adverse, and denies that said possession thereof was taken under the deeds of the predecessors in interest of said plaintiff, or in any other manner than in subordination to the legal title of said land, which defendant alleges was and remained in the probate judge, in trust for this defendant, and none other, until the eleventh day of December, 1888." 5. Denies that "said land had ever, prior to September 12, 1885, been officially platted, known, and designated as 'Lots 17, 18, 19, and 20,' and denies that there was, prior to September 12, 1885, any space, lot, piece, or parcel or fraction of land lying or existing between lots 19

and 20, block 37, or between either two or any of said lots numbered 17 to 21, and, on the contrary, alleges that prior to September 12, 1885, according to the official plat of said townsite, then existing, the said named lots, to wit, 19 and 20, were adjoining lots, and consisted of no more or less than the number of feet frontage than as shown on said plat then existing, or then expressed in the deeds to the predecessors in interest of said plaintiff." 6. "Denies that in truth or in reality, or in any other manner, the lots mentioned in said amended complaint as numbered 17, 18, 19, and 20, as being owned by plaintiff herein, composed or included 161 feet frontage on Main street, and running back to Jackson street, according to the original, established, and recognized boundaries, and denies that according to an accurate measurement said lots exceed the number of feet designated in the deeds therefor by M. F. Truett, the probate judge of the county aforesaid, 21.05 feet, or any other number of feet." 7. Defendant "admits that according to the calls of said deeds from said Truett, as such probate judge, no excess whatever existed, and admits that the title of plaintiff and his predecessors in interest was required and obtained accordingly, but denies that possession was taken accordingly, and denies that on account thereof, or any other account, as a question of law, or as a question of fact, the said lots, pieces, or parcels of land, or the dimensions thereof, were governed or controlled by any acts of plaintiff or his predecessors in interest, or by any other thing than the then existing plat, and the identical portion of the earth's surface, as shown and delineated thereon, and as expressed in said deeds, of which said plat constituted a necessary part; said plat being the original official plat, known as the 'Wheaton Plat,' which was approved January 7, 1869, and is now on file in the office of the county recorder of Lewis and Clarke county, Montana." 8. Denies that Robert S. Hamilton did, on the 20th of August, 1873, or at any other time, tender or offer to pay to the probate judge his fees or maximum price for any fraction, for the reason, as hereinbefore stated, to wit, that there was no fraction existing, under or according to any existing plat or survey, and denies that any such offer or tender for a thing not *in esse* would constitute the said Hamilton or his successors, either in

law or in equity or good conscience, or in any other manner, to be the owner of, or entitle him or them, or the plaintiff herein to a deed for the premises at all." 9. "Defendant alleges that at the date of the entry of said townsite, March 2, 1869, being the date when the probate judge made entry of said townsite in the United States land office at Helena, Montana, in trust for the several use and benefit of the occupants, defendant was, and for a long-time prior thereto had been, and for a long time subsequent thereto remained, in the actual, *bona fide*, and sole occupation, possession, and enjoyment, and residing upon a certain tract of land within the townsite of Helena, as so entered by said probate judge, and that a portion of said tract of land so occupied by this defendant was and is the same, and then included, and now includes, the whole of the identical tract of land described in defendant's deed therefor, as lot numbered 31, of block 37, of the townsite of Helena, according to the official plat and survey of said townsite of Helena, as approved September 12, 1885." 10. "Alleges that prior to the approval of said official plat, September 12, 1885, there was no official plat in existence which showed the land occupied by this defendant at the date of the entry of said townsite, and as described in defendant's deed therefor, in such manner and form as that defendant could by any possibility make an application therefor, as one of the beneficiaries of the trust imposed on the probate judge by reason of the entry and patent from the United States for said townsite, and alleges that from and after the approval of said official plat, September 12, 1885, until the time when this action was commenced, no notice of the approval of said plat; or that said land was and had been platted and surveyed, so that the deed for said lot could be issued, was published, or in any other manner given, as required by section 2015 of the Compiled Statutes of Montana; and defendant alleges that prior to said September 12, 1885, the only plat in existence, of said townsite, was one constructed by A. C. Wheaton in 1868, and approved by the county commisioners of Lewis and Clarke county, January 7, 1869, the same having been constructed and approved prior to the entry of said townsite, and which said so-called plat, not having been made in accordance with the actual loca-

tion of claimants, occupants, and owners, represented Main street and Jackson street, being the bounding streets of the land in dispute herein, as running at a different angle to the exterior boundaries of said townsite, and in a different position on the earth's surface, from the position of said streets as governed by actual occupancy, as such occupancy is shown by the said official plat approved September 12, 1885, whereby and by reason whereof the land claimed by plaintiff herein under the title and description cited in said amended complaint, if anywhere, is not the same land or portion of the earth's surface as that of which defendant is the owner by reason of his deed dated December 11, 1888." 11. "Defendant further alleges that, at the date of the entry of said townsite by the probate judge of Lewis and Clarke county, defendant had a dwelling-house upon, was living therein, and solely and exclusively occupying, the land described in his deed as lot number 31 of block number 37, according to said official plat approved September 12, 1885, and never since has he alienated the title thereto to any other person or persons whomsoever, and that he is now the owner and entitled to the possession thereof." 12. "And further alleges that between the date of the entry of said townsite until the said eleventh day of December, 1888, the title to said lot number 31, block 37, being the land in dispute herein, remained in the probate judge of said Lewis and Clarke county under and by virtue of the trust imposed on him by reason of the patent from the United States for said townsite." 13. "Defendant admits that on the fifteenth day of December, 1888, the probate judge of Lewis and Clarke county, Montana, did issue an instrument in writing, purporting to be a deed, executed in due form of law, to the plaintiff herein, for lot number 31, block 37, according to the plat and survey approved September 12, 1885, but denies that said deed was for that portion of the earth's surface described in said amended complaint as being a fraction of, or as part of, the original lots 17, 18, 19, and 20 of block 37, or either of said lots, according to, or as the same was delineated on, any plat, or as shown by any survey existing prior to September 12, 1885, and which is now or ever was recognized or approved as an official survey or official plat, and made under

any authority of law, but on the contrary alleges that said purported deed is for, and purports to convey unto plaintiff herein, the said lot 31, the property of this defendant; and defendant alleges that said deed issued and executed in due form of law December 15, 1888, unto the plaintiff herein was wrongfully and unlawfully issued, the title of said lot at that date being and still remaining, rightfully and lawfully, in this defendant, and the same casts a cloud upon this defendant's title to said lot number 31 in block 37." 14. "Defendant denies that, by reason of any false or fraudulent statement or representation made to the probate judge, he obtained a deed for said lot 31, but, on the contrary, alleges that all statements, affidavits, and proofs made to said probate judge by this defendant and by his witnesses, in making application therefor, were truthful, and strictly in accordance with facts, and that said deed to this defendant was issued rightfully and lawfully, and in strict conformity to the authority conferred by law upon, and according to the requirement of the trust imposed upon, the said probate judge by act of Congress authorizing the grant of said townsite, and by the terms of the patent of the United States issued to him for that sole purpose, and denies that said deed casts a cloud upon the title of plaintiff, or of any other person, to his damage or injury, greatly or otherwise." 15. "And defendant, for further defense, says that plaintiff is estopped from claiming that he has held said lot number 31 adversely to this defendant, or adversely to the true legal title, because he says that on the said fifteenth day of December, 1888, the said plaintiff did apply to and receive from said probate judge, of Lewis and Clarke county aforesaid, the deed hereinbefore mentioned for said lot, and ever since has been, and yet claims to hold the same, under and by virtue of said deed." 16. "And defendant demands that the deed obtained by plaintiff of the premises in dispute, from the probate judge, of date December 15, 1888, be canceled, and that judgment confirm defendant's alleged title to said premises, claimed by virtue of the facts set forth in the answer.

*Sanders, Cullen & Sanders,* and *Comly & Foote,* for Appellant.

The plaintiff is not entitled to judgment on the pleadings if the answer contains a denial of the material facts alleged as a

cause of action in the complaint, and a special defense is stated separately, even if the entire cause of action is confessed in the special defense. (*Nudd* v. *Thompson*, 34 Cal. 39.) Motions for judgment on the pleadings can be allowed only where the answer fails to deny any material allegation of the complaint. (*Wilson* v. *McDonald*, Cal. Sup. Ct. (July T. 1869); 3 Estee's Pleadings, 381.) A verified answer which in any part contains a distinct denial of a fact material to plaintiff's recovery cannot, whatever its effects, be treated as a nullity so as to entitle plaintiff to judgment on the pleadings. (*Ghiradelli* v. *McDermott*, 22 Cal. 539.) The question of adverse possession, and the extent of the same are questions for the jury. (Angell on Limitations, §§ 390, 398.) Where the party is in possession, with or without color of title, claiming in subordination to the legal title, or holding so by virtue of his admissions and acts, he is estopped from denying the title of the real owner; and these admissions and acts must be determined by the jury; they are questions of fact, and not for the court to determine. (Angell on Limitations, pp. 390 to 398 inclusive.)

*Toole & Wallace*, for Respondent.

HARWOOD, J.—It must be borne in mind, during all this consideration, that said fractional piece of land is the point of controversy—the only land in dispute—in this case. The allegations of the complaint respecting the acquisition and possession of lots 17, 18, 19, and 20, however material, are facts environing the real point of controversy. It will be observed by reading those allegations of the complaint contained in paragraphs 1 to 6 of the above statement that plaintiff alleges the acquisition of lots 20, 18, and 19, particularly alleging the boundaries of each lot, and averring that lot 20 is bounded on the south by lot 19, and, in describing lot 19, alleging that it was bounded on the north by lot 20. According to these allegations, taken in the ordinary meaning of terms, said two lots are alleged to directly adjoin one another, and there would be no room for a fraction between them. It is next alleged (paragraph 6 of the above statement) that in truth and reality said lots comprise a frontage on Main street of 161 feet, running back to, etc., "according to the established and recognized

boundaries of said lots. By this it is evidently intended that said lots, as described, "according to the original, established, and recognized boundaries," include said fraction, for it will be noticed, by referring to the particular allegations as to the frontage of each described lot on Main street, said lots 17 to 20 inclusive, comprise a frontage on Main street of 137 feet, not including the fraction; but, including said fraction of 21.05 feet, such frontage, according to the specific allegations of the complaint, amounts to 158.05 feet on Main street. So that by the allegation " that in truth and reality said lots," etc., " comprised 161 feet frontage on Main street," it must be intended to include said fraction as part of said lots; that is, that said lots, according to the numbers as platted, constitute 161 feet frontage, and necessarily include the fraction. But the next allegation (paragraph 7 of the statement above) sets forth that, by measurement, according to the "number of feet designated in the deeds therefor," said lots do not include said fraction of 21.05 feet, but that "according to said lots and boundaries thereof, according to the calls of said deeds from said Truett, probate judge, no excess whatever existed," and that " the title and possession of plaintiff and his predecessors in interest was acquired and obtained accordingly, and on account whereof said lots, pieces, or parcels of land, and the dimensions thereof, were governed and controlled by said boundary lines so established and recognized by plaintiff and his predecessors in interest."

Whether it is meant by this " that title and possession of plaintiff and his predecessors" was taken according to number of feet frontage which said deeds called for, not including the fraction, or whether "title and possession of plaintiff and his predecessors" was claimed and taken according to the other " calls of said deeds" which plaintiff alleges would include said fraction, is not clear, nor is it made any more clear by the allegation that " on account whereof the said lots, pieces, or parcels of land, and the dimensions thereof, were governed and controlled by said boundary lines so established and recognized by plaintiff and his predecessors in interest," because the last averment shows nothing more than that plaintiff and his predecessors contended that the boundaries were governed and controlled by lines established and recognized by them. And

the same obscurity appears in the allegation of the complaint found in paragraph 12, as numbered in the above statement, where it is averred that for more than five years, continuously, plaintiff and his tenants, etc., and those claiming under him, "have had said premises, and that portion thereof so deeded to and claimed by plaintiff, in actual possession, by means of substantial fences and inclosures."

The question arises here, what "land was so deeded to and claimed by plaintiff" in accordance with said deeds? He alleges that he was in possession and occupation of the land "so deeded." It would seem that the deeds would have to be construed (and construed in the light of evidence showing the real facts concerning said lots and fraction, according to the original plat, and any change in position thereof, and boundaries made by the subsequent plat of 1885, alleged in plaintiff's complaint, if any such change was made, section 632, Code of Civil Procedure), in order to ascertain what was deeded to plaintiff and his predecessors. Plaintiff himself alleges that, according to certain terms of the deeds, they did not convey said fractional piece of ground, but according to the "calls of the deeds" the fractional piece would be included.

Is the court to understand from the allegation of paragraph 12 (above statement), that "for more than five years, continuously and uninterruptedly, prior to the obtaining by defendant of the deed hereinafter mentioned, and the institution of this action, this plaintiff and his tenants, and those claiming under him, have had said premises," including said fraction, or all of 161 feet frontage, "in actual possession, by means of substantial fences and inclosures, and the actual occupation and use thereof has been open, hostile, and notorious, and possession taken under the deeds of the predecessors in interest of plaintiff"? If that is what the pleader intended, it seems far from what he alleges, because he alleges that plaintiff, his tenants, etc., "have had said premises, and that portion so deeded to and claimed by defendant, in actual possession," etc. The premises so deeded to plaintiff may include said fraction, or may not, according to the construction put upon the deeds; and so it may be true that plaintiff has had said lots so deeded inclosed, and held hostile and notorious adverse possession

thereof, without holding hostile or notorious adverse possession of said fraction.

Again, in paragraph 13, as set forth in the above statement, the same peculiarities of averment are observable; that is to say, it is alleged that Hamilton, one of plaintiff's grantors, was in possession and actual occupation of said lots 18 and 19. Now, if the pleader intends by this that the said Hamilton was in actual possession and occupation of said lots and fraction, or said lots including said fraction, why not so allege in plain terms? As we have seen, the lots, according to the number of feet frontage, or according to the "calls of said deeds," may or may not include said fraction, this depending upon the construction of the deeds. Paragraphs 9 and 10 of plaintiff's complaint, as numbered above, allege that said premises have been since 1874 inclosed and "inside of the inclosure of plaintiff," but these paragraphs do not aver adverse possession on the part of plaintiff. It is further observed that in the commencement of the complaint plaintiff alleges that the fraction in dispute lies between lots 19 and 20, whereas in paragraph 13, as numbered in the above statement, the fraction is alleged to be between lots 18 and 19.

Of course, such obscurities, and even errors and inaccuracies, might be cured by a trial, and findings of fact as a result of the trial; but, where judgment is demanded on the pleadings, it is our duty to scrutinize the allegations and denials with great care and caution.

Now, as to defendant's answer, the first and second paragraphs, as set forth above, are in the form of denials, but, in substance, are allegations of new matter not touched upon in the complaint. These paragraphs introduce for the first time the affirmation that, by the second survey and plat of said townsite made in 1885, said lots and the bounding streets were made to occupy a different position than the same occupied according to the original plat of said townsite of 1869. The same is again affirmed by defendant in paragraph 5, as set out in the above statement, where defendant denies that as officially platted and designated prior to September 12, 1885, there was any fraction at all between lots 19 and 20, or any of said lots, " and, on the contrary, alleges that prior to Septem-

ber 12, 1885, according to the official plat of said townsite then existing, said lots 19 and 20 were adjoining lots, and consisted of no more or less than the number of feet frontage than as shown on said plat then existing, or then expressed in the deeds of their predecessors in interest of plaintiff." And the same propositions are again affirmed in paragraphs 6 and 7 of the answer, as shown in the above statement. By these allegations and denials, defendant appears to insist that, according to the original plat of said townsite, said lots, as numbered and conveyed, lie directly adjoining one another, with no fraction, or room for fraction, between any of them, and that according to said original plat said lots comprise no more frontage than shown on the plat, and expressed in the deeds therefor, but that by the second survey and plat of said townsite, in 1885, the position of said lots and bounding streets was so changed as that said fraction did appear by the latter plat to be between two of said lots, namely, 19 and 20. This seems to be the theory of defendant's contention throughout this controversy, as we gather it from the allegations and denials of the answer; he insisting that plaintiff, through the calls of his deeds, both as to the boundaries and the number of feet frontage of said lots, as the same was originally platted, obtained all of the land which said deeds entitled him to.

Proceeding in the examination of defendant's answer, it will be found that he denies the allegation of the complaint that, " said defendant or any other persons except those claiming under plaintiff, have since 1874 been in the seisin or possession of any part of the 160 feet of the ground mentioned in the complaint as being inclosed "; admits that the land occupied by plaintiff has been so occupied for more than five years prior to the commencement of this action, but denies that such occupation, in so far as it relates to lot 31, block 37, was open, hostile, or notorious, or was adverse, or was taken under deeds of plaintiff's predecessors in interest, or in any manner except in subordination to the legal title, which was during that time in the probate judge, in trust for the defendant, and none other, until December 11, 1888; denies that said lots 17 to 20 comprised 161 feet frontage on Main street, according to the original, established, and recognized boundaries thereof, as alleged in

the complaint; denies that, according to an accurate measurement, said lots exceeded the number of feet designated in the deeds from the probate judge therefor by 21.05 or any other number of feet; admits that, according to the calls of said deeds, no excess whatever existed, and admits that the title of plaintiff and his predecessors in interest was acquired and obtained accordingly, but denies that possession was taken accordingly, and denies that the dimensions of said lots mentioned in plaintiff's complaint were governed or controlled by any acts of plaintiff, or his predecessors in interest, or by anything other than the existing plat, showing the identical portion of the earth's surface constituting said lots by numbers and dimensions, as expressed in said deeds, said plat being that originally established and known as the "Wheaton Plat," approved January 7, 1869, of record in the office of, etc.; denies that said Hamilton, on August 20, 1873, or at any other time, tendered or offered to pay the probate judge his fees and the maximum price of said fraction described by plaintiff in the complaint, because no such fraction existed between said lots, as alleged by plaintiff in his complaint, according to any plat or survey of said townsite, and denies that a tender for an alleged thing not in existence would give rise to any right, in law or equity, in favor of said Hamilton, or his successors in interest; alleges that when the original entry of said townsite was made by the probate judge, in trust for the use and benefit of the inhabitants thereof, defendant was, and for a long time theretofore had been; and for a long time thereafter continued to be, in actual, *bona fide* occupation and possession of the identical piece of land in dispute in this case, which was afterwards, but not until September 12, 1885, platted and designated as lot 31 in block 37 of said townsite; alleges that prior to September 12, 1885, no plat of said townsite designated or showed said piece of land, and therefore defendant was unable to apply for and enter and take conveyance of said lot to himself as beneficiary of the trust imposed on the probate judge by conveyance of the legal title of said lot from the United States to him; alleges that after said land in dispute was platted and designated as lot 31, block 37, by the plat approved September 12, 1885, no notice thereof was given, as

required by section 2015 of the Compiled Statutes; alleges that from the entry of said townsite to September 12, 1885, the only plat thereof in existence was one made by A. C. Wheaton, approved January 7, 1869, the same having been made and approved prior to the entry of said townsite; denies that, through any false or fraudulent representations or statements defendant procured a deed for said fractional piece of land from the probate judge, of date December 11, 1888, "but, on the contrary, alleges that all statements, affidavits, and proofs made to said probate judge by the defendant and his witnesses in making application therefor were strictly true."

In view of these denials and affirmations of the answer, and the peculiar conditions and contention shown in the pleadings, I cannot bring my mind to the conclusion, after much careful consideration, that it is a proper case for judgment on the pleadings. The case is not without some complications to be dealt with in proceeding to judgment, and much of the complication lies in ascertaining the exact facts which have prevailed in respect to the piece of land in controversy. The trial court proceeded upon the premise that it was admitted that plaintiff had held possession of the land in dispute, "as alleged in his complaint." No doubt this was justly gained from the liberality with which counsel may have admitted facts in combating the legal hypothesis that plaintiff could have held adverse possession while the legal title of said land in dispute resided in the probate judge. This hypothesis is denied in the answer, but, as a matter of fact, the answer also denies, in the disjunctive form that defendant has held "open, hostile, or notorious, or adverse possession" of said land in controversy; and on this appeal counsel for appellant, in their brief, contend that defendant's answer cannot be properly construed, "as the court states" that "defendant admits that plaintiff has been an occupant of said land for the time alleged."

It has been at least once held, and again intimated, that this court ought not to be governed in the review of a case on appeal by observations in the opinion of the court below as to matters of fact involved. (*Thorp* v. *Freed*, 1 Mont. 651; *Muller* v. *Buyck*, 12 Mont. 376.)

However, giving full force to the observation of the trial

court, that it was admitted plaintiff had held possession of the premises in dispute, " as alleged in his complaint," we have seen, upon an examination of the complaint, that its allegations in that respect are obscure, and require a construction of the deeds in the light of evidence as to the actual facts in respect to the occupation of said fraction, in order to get exact knowledge of what was included in the alleged possession of plaintiff and his predecessors; and this inquiry is further complicated by the fact that if what defendant sets forth in paragraphs 1, 2, 5, 6, and 7 of the answer is true (and those facts are not yet denied by replication), plaintiff did not have, and could not have had, actual occupation of said fraction, by the inclosure and possession of said lots, prior to September 12, 1885, because, according to those allegations, which were not denied by replication, the fraction did not lie between any of said lots, and the taking of possession of said lots by plaintiff and his predecessors, as alleged, up to that date, according to the plat, and even according to the position of the bounding streets prior to that date, could not have included said fraction.   It does not appear that defendant's counsel abandoned that portion of the answer contained in paragraphs 1, 2, 5, 6, and 7, as numbered in the above statement, nor does it appear that they expressly abandoned any portion of the answer.   Now, suppose it be assumed that the facts set out in those paragraphs are true; that is, according to the plat existing prior to 1885, and according to the boundaries, said lots directly joined one another, without any fractional piece of ground between any of them.   It would then appear that up to September, 1885, plaintiff and his predecessors, having inclosed said lots according to the plat then existing, and according to the calls of the deeds, both as to the number of feet frontage, and as to the boundaries, did not include said fractional piece of ground.   If, on the trial, that should be established as a fact, it would cut off all controversy as to plaintiff's alleged possession of said land prior to 1885, and the controversy would thereby be narrowed down to the history of said fractional piece of land since the new plat was made; and, as we have just seen, defendant denies, as a matter of fact, that plaintiff has had any adverse possession of said fractional piece of land.

Judgment on the pleadings cannot be properly pronounced while any material issues of fact are pending.  The judgment is therefore reversed, and the cause remanded.

*Reversed.*

PEMBERTON, C. J., concurs.

DE WITT, J.—If the complaint in this case is rightly construed to the effect that there is no allegation of possession of the premises by the plaintiff, or if such allegation be considered made, and remains finally denied by the defendant, of course judgment on the pleadings is error.  But I am inclined to the view that the difficulties and obscurities, and the want of allegation of possession, in the complaint, which are found by the learned and critical opinion of my associates, arise simply from the very peculiar facts as to the fractional lot called in the year 1885 "Lot 31."  The portion of the earth's surface designated in that year as "Lot 31" always existed, but never before that time had that name and description been applied to it.  Plaintiff could not allege that he had possession of a lot by that name prior to 1885, but he does allege "that at said last-named date [May 7, 1874] he also became the owner and possessed of a fractional piece of ground, should the same be so regarded, situate between lots 19 and 20."  To be sure, he alleges that lots 19 and 20 were contiguous.  It seems that they were contiguous by the original survey, but by a later survey there was found to be ground between them, which was then called "Lot 31."

As remarked above, the facts are peculiar, and I think the pleadings state these peculiar facts, and, upon a view of the whole of them, it appears to me that a liberal construction (Code Civ. Proc., § 100) of the pleadings leads to the view that possession of the land itself is alleged, but not of the land by description as "Lot 31."  If this be correct, then concede that the answer denies the possession.  Then, of course, there should not be a judgment on the pleadings.  But how are we to regard the following language in the judgment: "This cause coming on to be heard, . . . . it was agreed that plaintiff's occupation and possession of the premises, as alleged in his complaint, was a fact upon which the decision of the court should be based, but denied by the defendant that any adverse

possession could be had or held by said plaintiff, as against him, under the facts set forth in the pleadings herein; also, stood upon the legal questions involved. And the court, in connection with said pleadings, taking into consideration the admission and agreement of the parties in said cause," etc. So it appears by the judgment that plaintiff's occupation and possession was agreed to be a fact; that is, his possession as alleged in his complaint; and, as above observed, I think the allegations of the complaint can be fairly construed as alleging the possession of the particular ground in controversy.

The matter which I quote above is not from the opinion of the court below, but from the judgment. It is not a construction of the pleadings by the court below, but is part of the judgment. I have understood all the time that this matter to which I refer was practically, and was, indeed, a stipulation made by the parties upon the hearing in the district court. The language indicates this, for the judgment says that the court, in connection with the pleadings, took into consideration the admission and agreement of the parties. If this is not the true situation, and this matter in the judgment is to be regarded simply as a construction placed by the district court upon the pleadings, then I am of opinion that the denial of possession in the answer forbids a judgment on the pleadings. But I am quite satisfied that this particular matter in the judgment was an agreement of the parties. The judgment itself states that it was rendered upon the complaint of plaintiff, and the answer of defendant, and the motion for judgment on the pleadings, and the admission and agreement of the parties.

Upon a motion for judgment on the pleadings, I do not understand why parties may not agree before the court, and have the agreement go in the record, as it has gone into the judgment in this case, that a certain condition of affairs is the fact, which fact partially modifies the position taken by the pleadings. Such is what the parties, in my opinion, have done in this case in the district court. I think they intended to, and did, present to the district court a situation which may be stated as follows: "Plaintiff's *possessio pedis* of the actual ground in controversy is conceded, and conceded to be, and to have been, adverse, if, under all the other facts in the case, his possession

under those circumstances can be held, as a matter of law, to be an adverse possession." And it was this question of law which I understand the parties, by their pleadings and admission and agreement, intended to, and did, present to the district court, and which was there decided. I think that this was the theory of the case below, and the contention of the parties, and the point of view of the court. Why may not this court properly take the same point of view, and decide whether the judgment should have been rendered upon the pleadings, in connection with the admission and agreement? But as my associates consider that what I have understood to be an agreement or stipulation on the hearing was either not one, or must be disregarded, I will reserve an opinion upon the questions of law until they come to this court, on any further appeal that may be taken.