JOSEPH HORSKY, JR., RESPONDENT, *v.* PATRICK MORAN, APPELLANT.

[Submitted May 23, 1898. Decided July 25, 1898.]

*Townsite Patent— Collateral Attack—Privity—Laches.*

The plaintiff, who claimed title and right of possession to certain premises included within the limits of a patented townsite, a deed to which he had obtained from the probate judge, brought an action against defendant to quiet title to the same. Defendant claimed under a placer location existing at the date of the application for and entry of the townsite, but his right to which he did not assert at the time the application was made. It further appeared that for nearly twenty years defendant had allowed plaintiff to occupy the premises. *Held:* 1st. That the deed under the townsite patent was not void, and that, if voidable, defendant did not show any privity with the United States, and could not attack the townsite patent collaterally. 2nd. That the defendant had been guilty of laches and could not attack the plaintiff's title.

*Appeal from District Court, Lewis and Clarke County; Horace R. Buck, Judge.*

ACTION by Joseph Horsky, Jr., against Patrick Moran, to quiet title. There was a judgment for plaintiff on the pleadings, and defendant appeals. Affirmed.

*T. J. Walsh,* for Appellant.

*Toole & Wallace,* for Respondent.

PER CURIAM. Action to quiet title. The pleadings show substantially the facts to be as follows: That when the probate judge of Lewis and Clarke county, as trustee for the occupants of the townsite of Helena, made the entry of the townsite on March 2, 1869, the defendant and appellant, Moran, resided upon and was in possession of certain fractional parts of ground located on Main street, in the original townsite of the city of Helena. The townsite was platted and deeds issued to the original claimants of town lots, and in 1874 plaintiff and his predecessors in interest received deeds to the aforesaid lots in controversy from the probate judge. Plaintiff ever since 1874 has been in the exclusive and actual possession of the property sued for. In 1888 the defendant applied for and obtained a deed from the probate judge to the land in dispute.

The defendant concedes the facts claimed by the plaintiff to constitute adverse possession, but sets up that he was in possession of a validly located placer claim at the date of the application for, and the entry of, the Helena townsite, and that the deed procured by him in 1888 was obtained for the purpose of further assuring his title to the property, and to enable him to get into possession in order to prosecute the necessary development work on his mining claim, but that the plaintiff refused to recognize his right to the possession of the premises described in the deed or to allow him to enter into possession of the same. His position is that his title to the lots in controversy springs from his location of the land, embracing them as a placer claim. He makes no claim of right by reason of the probate judge having entered the lots with other lots lying within the exterior boundaries of the Helena townsite as a trustee for himself as an occupant, but relies upon the contention that the mining claim, located prior to, and in his possession at the date of, the application for the Helena townsite, was absolutely excluded from, and that the title thereto did not pass under, the United States patent to the probate judge for said townsite; that is to say, he stands upon the proposition that the plaintiff, Horsky, acquired no

rights by adverse possession to the lots in question, because the legal title to the same is still vested in the United States.

After the entry of the townsite, and prior to the time when the plaintiff became the owner of the premises claimed therein, the defendant left the state of Montana, leaving his mining claim in the possession of his agent; and he avers that during his absence, as he is informed and believes, plaintiff, without right, entered upon, and has since continued to occupy, those portions of the mining claim described in the complaint, and that in like manner other parties entered upon other portions, and continued to hold and occupy the same, and excluded the defendant from the possession thereof. He further sets up that under the laws of the United States and the rules governing mining claims he is required, so as to enable him to obtain a patent, to do certain development work, but that the plaintiff refused to permit him to enter upon the premises for the purpose of doing such work, and that any attempt upon his part to enter to do the work would subject him to a summary action and to personal violence, though defendant is, and always has been, desirous of doing such work and acquiring patent to the mining claim. Defendant's prayer is that plaintiff be dismissed, and that he (defendant) be decreed to be entitled to the possession of the premises described in the complaint, and that an injunction issue preventing plaintiff from interfering with his work of mining the property involved.

The plaintiff moved for a judgment on the pleadings, because the answer stated no defense, and was sham and frivolous, and the cause of action was barred on account of laches of the defendant, as shown by the papers and proceedings. The district court granted the motion, and rendered judgment in plaintiff's favor, declaring defendant's claim, or pretended claim, to be void and without right or equity, and ordering that the deed of the probate judge to defendant be canceled and made null and void. Defendant appeals.

The record contains the opinion of the district court. It is an elaborate review of the decisions of the supreme court of the United States bearing upon the questions involved, and

proceeds upon a recognition of the distinctions drawn by the decisions of that court between the reservation or exclusion in and from a placer patent and the doctrine of reservation or exclusion from a townsite, homestead or pre-emption patent. After careful examination of the authorities cited, and many more, we have concluded to adopt the opinion of the trial court as expressive of the unanimous views we hold upon the status of this defendant, who assails the possession and claim of title of the plaintiff, and asks affirmative relief, but who shows that he wholly neglected to assert and protect any rights he ever had as the possessor of a valid mining claim when the townsite patent was applied for, and offers no excuse for his inaction during the period of nearly twenty years after plaintiff entered upon and occupied the lots before he brought this suit, except that plaintiff refused to allow him to enter upon the premises. By his answer he shows that he has long since disconnected himself from the United States government, stands in no privity with it, and possesses no claim, legal or equitable, to the lots which plaintiff has openly, notoriously and continuously occupied for over twenty years. Defendant is without any title or claim of title at all. He is in the attitude of an intruder, and it does not lie in his mouth to be heard to assail the plaintiff's position. (*Bohall* v. *Dilla*, 114 U. S. 50, 5 Sup. Ct. 782.) The pleadings, therefore, make the case a proper one to apply the doctrine of laches, well stated by Justice Brewer in *Naddo* v. *Bardon*, 2 C. C. A. 337, 51 Fed. 495, as follows: ''No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and long possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from

enforcing it when its enforcement will work large injury to many.''

Although we put our affirmance of the judgment upon the ground of laches, a majority of the court believe that the decision and reasoning of the trial court is the correct solution of the other questions discussed.

Judge Buck's opinion is as follows: ''In this action the defendant, Moran, contends that the mining claim, located prior to, and in his possession at the date of, the application for the Helena townsite, was absolutely excluded from, and that the title thereto did not pass under, the United States patent to the probate judge for said townsite. If this premise is conceded, it necessarily follows that the plaintiff has gained no right by adverse possession to the lot of land in contro-versy, because the legal title to the same is still vested in the United States government. Defendant relies chiefly upon several decisions of the supreme court of Montana when a terri-tory—cases in which (save *King* v. *Thomas*) conflicts arose between parties claiming title to lots in patented townsites—and claimants basing their title to the same on patents issued for mining claims located prior to the applications for the townsite patents. He cites *Silver Bow M. & M. Co.* v. *Clarke*, 5 Mont. 378, 5 Pac. 570; *Talbott* v. *King*, 6 Mont. 76, 9 Pac. 434; *King* v. *Thomas*, 6 Mont. 409, 12 Pac. 865; *Butte City Smokehouse Lode Cases*, 6 Mont. 397, 12 Pac. 858, and certain decisions of the United States supreme court on which the Montana cases depend. The decisions of the United States supreme court, in cases where conflicts have arisen be-tween holders of quartz lode locations or patents and patented placer locations, if applicable, apparently favor defendant's contention of an absolute exclusion. (See *Mantle* v. *Noyes*, 5 Mont. 274, 5 Pac. 856, 127 U. S. 348, 8 Sup. Ct. 1132; *Sullivan* v. *I. S. M. Co.*, 109 U. S. 550, 3 Sup. Ct. 339; *Id.* 143 U. S. 431, 12 Sup. Ct. 555; *Reynolds* v. *I. S. M. Co.*, 116 U. S. 687, 6 Sup. Ct. 601; 124 U. S. 374, 8 Sup. Ct. 598; *Iron S. & M. Co.* v. *Campbell*, 133 U. S. 286, 10 Sup. Ct. 765, and *Iron S. M. Co.* v. *Mike & Starr Gold*

*& Silver Min. Co.*, 143 U. S. 394, 12 Sup. Ct. 543.) All these cases, save *Mantle* v. *Noyes*, an equitable action, were actions in ejectment. These decisions hold that in a placer patent there are excepted and reserved, by the terms of the particular statutes regulating placer claims, from the conveyance, any vein or lode within the placer claim known to exist at the date of the application for the patent. Any prior or valid quartz location within such area is also excepted. In *Noyes* v. *Mantle*, 127 U. S., on page 353, 8 Sup. Ct. 1134, the court, however, places this latter kind of exception on the following ground: 'The section (Section 2333 U. S. Rev. Statutes, regulating placer patents) can have no application to lodes or veins within the boundaries of a placer claim which have been previously located under the laws of the United States, and are in the possession of the locators or their assigns;' and it declares that such locations have already been disposed of by the government—citing from *Belk* v. *Meagher*, 104 U. S. 279: 'A mining claim perfected under the law is property, in the highest sense of the term, which may be bought, sold and conveyed, and will pass by descent.' Whether logical or not, there is a recognized distinction in the doctrine of reservation or exclusion applied to placer patents and the one applied to pre-emption, homestead and townsite patents. The last three in this respect are classed together. (See *Deffeback* v. *Hawke*, 115 U. S., on page 404, 6 Sup. Ct. 95, and *Barden* v. *N. P. R. R. Co.*, 154 U. S., on page 322, 14 Sup. Ct. 330.)

"These placer-quartz patent cases, then, cannot control the present controversy, despite their apparent applicability by logical analogy.

"At the time of the issuance of the patent for the original townsite of Helena, the general control or supervision of the title to land embraced therein had been intrusted to the officers of the land department of the government. Whether the said land, or any portion of it, was mineral or nonmineral in character, this was true. The officers of the land department allowed the townsite entry, received the purchase price for

every portion of land included therein, and a patent was issued for the same. Under these conditions, is the patent void or voidable as to the mining claim located by the defendant?

"A patent issued by the land department of the United States, as a general rule, transfers the legal title to the land, and has attached to it all presumptions of conclusiveness. It may, however, be absolutely void on its face. And this may be shown when it is considered with reference to the statutes governing it, of which judicial notice is taken; as, for example, when the land described therein has been absolutely reserved from sale, or the government has not title to it, or the land department officers attempt to convey an unauthorized amount of land. When so void, advantage may be taken of it collaterally, in any form of action, legal or otherwise, without extrinsic proof. Such nullity may also appear and be declared from a consideration of extrinsic proof in connection with the law governing it; as, for instance, where, in a conflict between two patents for the same tract of land, each regular on its face, it is shown that the junior patent is based upon an entry and certificate of final proof and purchase prior in time to the senior patent. Of course, where it readily appears from extrinsic proof, in the light of the law, that the land department had no subject-matter on which to act, as, for instance, where the proof showed that the land embraced in the patent never belonged to the United States, or that it had been previously granted in a regular patent issued by the officers of said department acting within the scope of their authority in the land department, that it can be shown collaterally, even in an action at law, is clear. The same principle would apply where a deed on which a grantee relies is shown to be for property never owned by the grantor, or previously conveyed by him.

"In the case of the *United States* v. *Schurz*, 102 U. S. 378 (which, rather strangely, is cited in *Iron Silver Mining Co* v. *Campbell*, 135 U. S. 301, 10 Sup. Ct. 765, a placer-quartz contest), a homesteader had received a certificate of final proof and receipt of purchase price paid for his land, and the per-

sons actually contesting his title were townsite claimants. The court uses the following language: 'We are not prepared to say that if the patent is absolutely void, so that no right could possibly accrue to the plaintiff under it, the suggestion would not be a sound one. But the distinction between a void and a voidable instrument, though sometimes a very nice one, is still a well-recognized distinction, on which valuable rights often depend. If a patent should issue for land in the state of Massachusetts, where the government never had any, it would be absolutely void. If it should issue for land once owned by the government, but long before sold and conveyed by patent to another, who held possession, it might be held void in a court at law on the production of the senior patent. * * * Here the question is whether this land has been withdrawn from the control of the land department by certain acts of other persons which include it within the limits of an incorporated town. The whole question is one of disputed law and disputed facts. * * * If they (the land officers) decided erroneously, the patent may be voidable, but not absolutely void.' In this case, it is true, a contest was pending in the land office between the holder of the homestead certificate and the townsite lot claimants; the latter, no doubt, as a matter of fact, being mere trespassers, and not in a position to contest, under later authorities. (See *Smelting Co.* v. *Kent,* 104 U. S. 644.) It is true, also, that where parties have had a contest over their claims in the land department, and one has succeeded in obtaining, virtually as a result of the contest, a patent, the courts either refuse altogether or are very reluctant to go behind the decisions of the land office in the premises. (*U. S.* v. *Throckmorton,* 98 U. S. 61; *Vance* v. *Burbank,* 101 U. S. 514; *U. S.* v. *Minor,* 114 U. S. 233, 5 Sup. Ct. 836; *Steel* v. *Smelting Co.,* 106 U. S. 447, 1 Sup. Ct. 389.) But the language I have just quoted is clearly applicable, in a general way, to this question of how a patent may be attacked.

"There are certain decisions, however, often cited as holding that, even when a patent regular on its face has been is-

sued by officers of the land department acting apparently within the scope of their jurisdiction—that is to say, having a general supervision of the title to the land conveyed—extrinsic evidence may be offered in an action at law to establish, as a matter of fact, said officers had no authority to issue the patent, for the reason that the land had been previously disposed of or reserved from sale. (See *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. 389, and also various decisions in which they are cited.

"It is from obscure language used in some of these decisions, mainly the phrase 'previously conveyed,' that confusion arises as to what constitutes such an absence of authority as will authorize a judgment of nullity on collateral attack. The Montana decisions relied upon by defendant indicate this confusion. A careful consideration of the case, however, satisfies me that the obscure expressions from which it results are susceptible of definite interpretation and construction. The general rule, to reiterate, is as follows: 'It has always been held that an absolute want of power to issue a patent could be shown in a court of law to defeat a title set up under it, though, where it is merely voidable, the party may be compelled to resort to a court of equity to have it so declared.' (*Sherman* v. *Buick*, 93 U. S. 216.)

"In *Doolan* v. *Carr*, 125 U. S. 618, 8 Sup. Ct. 1228, an action of ejection brought by a grantee under a United States patent to a railroad company against two persons in possession, who had attempted to file declaratory pre-emption statements for the same in the land office, but had not been permitted to do so, the court, on page 624, uses the following language: 'There is no question as to the principle that where the officers of the government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity, subject, however, at all times, to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if these officers acted

without authority, if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void—void for want of power in them to act on the subject matter of the patent, not merely voidable. In which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided. The distinction is a manifest one, although the circumstances that enter into it are not always easily defined. It is, nevertheless a clear distinction, established by the law, and it has been often asserted in this court, that even a patent from the government of the United States, issued with all the forms of the law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue.'

"'The decisions of this court on this subject are so full and decisive that a reference to a few of them is all that is necessary: *Polk's Lessee* v. *Wendal*, 9 Cranch, 87; *New Orleans* v. *U. S.*, 10 Pet. 730; *Wilcox* v. *Jackson*, 13 Pet. 498, 509; *Stoddard* v. *Chambers*, 2 How. 284, 317; *Easton* v. *Salisbury*, 21 How. 426, 428; *Reichart* v. *Felps*, 6 Wall. 160; *Best* v. *Polk*, 18 Wall. 112, 117; *Leavenworth R. R.* v. *U. S.*, 92 U. S. 733; *Newhall* v. *Sanger*, 92 U. S. 761; *Sherman* v. *Buick*, 93 U. S. 209; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. 389; *Kansas Pacific Railway Co.* v. *Dunmeyer*, 113 U. S. 629, 642, 5 Sup. Ct. 566; *Reynolds* v. *I. S. M. Co.*, 116 U. S. 687, 6 Sup. Ct. 601. See, also, *Knight* v. *U. S. Land Association*, 142 U. S. 161, 12 Sup. Ct. 258.

"'I cite the case of *Doolan* v. *Carr* because it is sweeping in its announcement of the right to attack a patent collaterally, and cites many decisions on the subject. But it appears in this very case that the patent to the railroad company was for lands over which, as the appellants contended, at the date of its issuance the land department had absolutely no control, as they were *sub judice*. No legal title could have passed un-

der the proof offered, as it tended to show both that the land in controversy had never been embraced in the railroad grant, and was not public when included in the patent, and the court seems to have had prominently in view the principle that in an action of ejectment the plaintiff must prevail on the strength of his own title. See page 629 of the opinion. See, also, *Steel* v. *Smelting Co.*, 106 U. S. on page 452, 1 Sup. Ct. 389, as to this principle controlling in actions of ejectment.

"Chief Justice Waite, in his dissenting opinion on page 636, summarizes his conclusions from a review of the cases cited by a majority of the court as follows: 'Many more cases of a similar character might be cited, but it is needless to pursue them further. They establish, beyond all question, that if one holds under an older title, or if he is in possession under a junior claim to represent the title of the government, he may attack the validity of the patent in a suit at law on the ground that it was issued without proper authority. On the other hand, it seems to me well settled that, if he who seeks to contest the patent is a volunteer—a mere intruder—he will not be heard;' and he cites numerous authorities sustaining this view. The main ground of his dissent was that the defendants, being mere intruders, whose pre-emption entries had never been received, were not in a position to question the patent. He quotes also in this dissenting opinion, on page 637, from the language of Chief Justice Marshall in *Hoofnagle* v. *Anderson*, 7 Wheat. 212, as follows: 'A patent appropriates the land it covers, and that land, being no longer vacant, is no longer subject to location. If the patent has been issued irregularly the government may provide means for repealing it; but no individual has a right to annul it, to consider the lands still vacant, and appropriate it to himself.' (Pages 214, 215.) 'This seems to me,' Judge Waite continues, 'to be the true rule; and one way the government may adopt to annul a patent which has been issued without authority of law is to grant the land to another, and thus clothe the new grantee with its own power to test the validity of the former proceeding to divest it of title. Such

a grantee will thus be made to represent the United States by authority, and he may sue for the land.   With such a title, or. something equivalent to it, the courts may properly, as has been done heretofore, allow him to assert his own title; that is, the title of the government against one which was apparently granted before.   Such an attack on the title would be direct, not collateral, as authority to proceed had been given by the government for that purpose.'

"I do not think Chief Justice Waite states his views of the subject very clearly, but his collation of the authorities is convenient, and the distinction he seeks to establish between mere intruders who attempt to attack a patent collaterally and persons having a direct interest in its impeachment is apparent. In so far as his doctrine as to mere intruders being applicable in actions at law, however, it seems somewhat anomalous.   It evidently is a recognition of the application of equitable principles in strictly legal actions.   Equity furnishes ample relief where a patent has been issued to one when another is entitled to it.   Where the land department, through mistake or inadvertence, has issued to one a patent for land to which another is entitled, equity will afford relief in a suit instituted by the government to set aside the patent.   (*Hughes* v. *U. S.*, 4 Wall. 232; *U. S.* v. *Minor*, 114 U. S. 233, 5 Sup. Ct. 836; *Chandler* v. *Calumet & Hecla Mining Co.*, 149 U. S., on page 93, 13 Sup. Ct. 798.)   Even without the intervention of government, equity will give appropriate relief, as between the contestants themselves, where the land department, by mistake of law or such inadvertence, has given to one man land which, on the undisputed facts, belongs to another.   (*Moore* v. *Robbins*, 96 U. S. 530.   See, also, *Curtner* v. *U. S.*, 149 U. S. 662, 13 Sup. Ct. 985, 1041.)

"In *U. S.* v. *Stone*, 2 Wall. 535, the court uses this language:   'A patent is the highest evidence of title, and is conclusive against the government, and all claiming under junior. patents or titles, until it is set aside or annulled by some judicial tribunal.   In England this was originally done by *scire facias*, but a bill in chancery is found a more convenient rem-

edy;' and then somewhat confusingly continues: 'Nor is fraud in the patentee the only ground on which a bill will be sustained. Patents are sometimes issued unadvisedly, or by mistake, when the officer has no authority in the law to grant them, or where another party has a higher equity and should have received the patent. In such cases courts of law will pronounce them void. The patent is but evidence of the grant, and the officer who issues it acts ministerially, and not judicially. If he issues a patent for land reserved from sale by law, such patent is void for want of authority. But one officer of the land department is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court.' In this action a bill of equity was filed to cancel certain patents which had been issued for lands previously segregated as a military reservation. It is at least clear from the opinion that a bill in equity was the proper remedy against these patents; and this would seem to be a recognition that they were only voidable as against the government until set aside, although the opinion states that they were void *ab initio*. In fact, the rule as to attacking a patent is not at all obscure when applied as between a patentee and the United States government.

"In the case of *Hughes* v. *United States*, 4 Wall. 232, where land had been patented to Hughes in disregard of the rights of Goodbee, and a pre-emptioner who was in possession at the time of the issuance of the patent, had paid the purchase price of the land, and held a receiver's certificate, the court said (page 236): 'When this case was here on demurrer the patent was considered by the court to be a valid instrument, conveying the fee of the United States, and, until annulled, as rendering them incapable of complying with their agreement to Goodbee or his alienees. Whether regarded in that aspect, or as a void instrument, issued without authority, it *prima facie* passed the title, and therefore it was the plain duty of the United States to seek to vacate and annul the instrument, to the end that the previous engagement might be fulfilled by the transfer of a clear title,

the only one intended for the purchaser by the act of congress. The power of a court of equity, by its decree to vacate and annul the patent, under the circumstances of this case, is undoubted. Relief, when deeds or other instruments are executed by mistake or inadvertence of agents, as well as upon false suggestions, is a common head of equity jurisdiction.'

"In the case of *United States* v. *Beebe*, 127 U. S. 338, 8 Sup. Ct. 1083, is cited the case of *Hughes* v. *United States*, *supra*, with approval. In the Beebe case fraud in the procurement was the ground on which patent was sought to be set aside, but it was claimed to be void also on the ground that at the date of the issuance of the patent the United States had no title to the land conveyed. The court denied the relief sought.

"*Curtner* v. *United States*, 149 U. S. 662, 13 Sup. Ct. 985, 1041, following *United States* v. *Beebe*, in principle, and deciding against the United States, was a case where a bill in equity was filed by the government to set aside certain lands which, by error and inadvertance and mistake on the part of the officers of the land department, had been listed to the State of California, when as a fact they had been previously granted by an act of Congress to a railroad company. The court said: 'If that action was wholly void, then it was open to collateral attack, and the railroad company and its grantees could have brought suit to test the legal title at once. (*Doolan* v. *Carr*, 125 U. S. 618, 8 Sup. Ct. 1228.) If that action was not void, but the interior department had taken mistaken views of the law, or drawn erroneous conclusions from the evidence, and the railroad company and its grantees possessed such equities as would control the legal title vested in the state and its grantees, the resort could have been had to a court of equity for relief. (*Smelting Co.* v. *Kemp*, 104 U. S. 636.)'

"If, then, even in an equitable proceeding, brought directly by the government to set aside a patent because the lands embraced in it had been previously disposed of, such a patent, in

so far as it relates directly to the government, is not as a rule considered as void *ab initio*, surely the court must regard it as having passed the legal title.   This doctrine of voidability only as to the government is incidentally recognized in actions at law.

"In *Wright* v. *Roseberry*, 121 U. S. 488, 7 Sup. Ct. 985—ejectment brought by a claimant under a railroad grant against holders of agricultural patents, based upon settlements subsequent to the grant—the court says, on page 518:  'These patents were evidence that whatever title the United States then held passed to the patentees.''

''In *Bicknell* v. *Comstock*, 113 U. S. 149, 5 Sup. Ct. 399—a suit on a covenant of warranty, but as a matter of fact brought for the purpose of establishing the superiority of a title claimed under a state grant—the court said:  'It is not necessary to decide whether this patent conveyed a valid title or not.   It devested the title of the United States, if it had not been devested before.'

''This language in *Water and Mining Co.* v. *Bugbey*, 96 U. S. 165, is also apposite.   The court on page 167 said: 'In *Sherman* v. *Buick*, 93 U. S. 209, it was decided that the state of California took no title to sections 16 and 36 under the act of 1853, as against an actual settler before the survey, claiming the benefit of the pre-emption laws, who perfected his claim by a patent from the United States.   *   *   *   As against all the world except the pre-emption settler, the title of the United States passed to the state upon the completion of the surveys, and, if the settler failed to assert his claim or to make it good, the rights of the state became absolute.'

''There is an inconsistency in regarding the patent as voidable only so far as the United States government is concerned, but as absolutely void *ab initio* in so far as it conflicts with the right of one to whom, in the language of the cases, the land embraced in the patent has been previously disposed.  To illustrate this:  In *Hughes* v. *U. S.*, *supra*, Goodbee, in whose behalf the government filed the bill in equity to set aside the Hughes patent, was in possession under a certificate of pur-

chase; while in *Doolan* v. *Carr*, a suit in ejectment, the plaintiff claimed, under a patent, land in the possession of the defendants, who had not even filed pre-emption entries. Chief Justice Waite, in his dissenting opinion in *Doolan* v. *Carr*, 125 U. S. 633, 8 Sup. Ct. 1236, says: 'I feel compelled to withhold my assent to this judgment. The ground of my dissent is not that, in a proper case, the validity of a patent of the United States for the conveyance of lands may not be attacked in a suit at law by proving that it was issued without the requisite authority, but that this is not a proper case for the application of the rule. To show that I recognize the existence of the right to make such proof, if the person who offers it is in a position to do so, it is only necessary to refer to *Simmons* v. *Wagner*, 101 U. S. 260, where, as the organ of the court, I announced the decision that one in possession under a certificate issued by a proper officer in the regular course of his official duties, showing that he had bought and paid for the land, might successfully defend an action of ejectment brought against him by the holder of a patent issued upon an entry by another party made long after his rights accrued; and this because, after a purchase under which he was in possession, the land was no longer a part of the public domain, and the officers of the United States had no authority to sell it a second time. In my opinion, however, such proof can only be made by one who holds a right at law or in equity which is prior in time to that of the patentee, or by one who claims under the United States by a subsequent grant or some authorized recognition of title. Unless I have misinterpreted the cases on this subject, that has always been the doctrine of this court.'

"Judge Hanford in *Stimson Land Co.* v. *Rawson*, 62 Fed., on page 428, says: 'The decisions of the supreme court of the United States establish the following propositions: When land has been sold by the United States, and the purchase money paid, it becomes segregated from the body of the public lands, and is no longer the property of the government, but is the property of the purchaser. (*Carroll* v. *Safford*, 3

How. 460; *Witherspoon* v. *Duncan*, 4 Wall. 210; *Wirth* v. *Branson*, 98 U. S. 118; *Simmons* v. *Wagner*, 101 U. S. 260.) After a sale, until the patent is issued, the government holds the mere legal title in trust for the purchaser, and, in case of a resale, the second purchaser would take the title charged with the trust. (*Carroll* v. *Safford, supra*; *Lindsey* v. *Hawes*, 2 Black. 554.) When the right of a patent becomes perfect, the full equitable title passes to the purchaser, with all the benefits, immunities, and burdens of ownership. (*Benson Mining & Smelting Co.* v. *Alta Mining & Smelting Co.*, 145 U. S. 428, 12 Sup. Ct. 877.) A contract for the purchase of public land is complete when the certificate of entry has been executed and delivered. (*Witherspoon* v. *Duncan, supra.*) A patent certificate protects the purchaser's rights as fully as a patent. (*Carroll* v. *Safford, supra.*) A vested right to a patent for public land is equivalent to a patent issued. (*Stark* v. *Starrs*, 6 Wall. 402.) The execution and delivery of a patent, after the right to it has become complete, are ministerial acts of the officers charged with that duty. (*Simmons* v. *Wagner, supra.*)

"Conceding that Judge Hanford and Chief Justice Waite correctly declare the rule, would it not be the better legal logic invariably, where a *prima facie* holder of the legal title which has been conveyed to him by officers of the land department, who exercise a general supervision of the title, brings an action in ejectment against the holder of the equitable title in possession, to confine the latter to equitable redress? It may be, then, that too much liberality in expression has been indulged in as to allowing extrinsic evidence to be offered in an action at law by one in possession to establish a lack of authority on the part of the officers of the land department in the issuance of a patent. But, if this be true, the language in some of the quartz-placer conflict cases to the contrary notwithstanding, this liberality has been indulged in where there were defendants in possession closely connected with the government title, either legally or equitably.

"Now, what is the character of the title obtained by defend-

ant to the land in controversy from his mining location? Was
the land embraced therein previously disposed of by the gov-
ernment as far as the townsite patent is concerned? I am
well aware that in several cases, notably *Belk* v. *Meagher*, 104
U. S. 283, and *Forbes* v. *Gracey*, 94 U. S. 762, the title con-
ferred by a mining location is spoken of in terms of such high
respect as almost to justify the inference that it is on a par
with a title by patent, or one based on a certificate of final
proof and purchase; but surely the court, using this language
in cases where vital existing rights or claims of rights were
before it, did not intend such inference to be drawn and ap-
plied to all cases. Before the holder of such a claim has made
proof of his compliance with the statutory requirements regu-
lating the obtainment of a patent to his location, and paid the
purchase price therefor, he has only an inchoate right to title,
at best. He is under no obligation to make final proof, and
pay the purchase price, so as to entitle him to patent. ( *Water
and Mining Co.* v. *Bugbey*, 96 U. S., on page 167.) It is
well to notice here that there is a clear distinction between the
holders of a valid claim whose rights are possessory only, and
one who, having fulfilled all the conditions required by law,
has received or is entitled to a certificate of purchase. (See
*Sherman* v. *Buick*, 93 U. S. 209; *Simmons* v. *Wagner*, 101
U. S., page 260; *Stimson Land Co.* v. *Rawson*, 62 Fed. 427.)

''There is no grant in *præsenti*, under the mineral laws, to
the mere locator of a mining claim. 'There cannot be a grant
unless there is a grantee, and consequently there cannot be a
present grant unless there is a present grantee. * * * In
other words, when an immediate grant was intended, an im-
mediate grantee, having all the requisite qualifications, was
named.' (*Hall* v. *Russell*, 101 U. S. 509.) Again, the court,
on page 512, says: 'Had it been supposed that the title was
already in the settler, subject only to defeasance if the condi-
tion subsequent to the grant should not be performed, we can-
not but think that provision would have been made for a trans-
fer of the land free from the condition, instead of only the
settler's rights.' It is true, this language is used with refer-

ence to settlers under the Oregon donation act, but, *mutatis mutandis,* I regard it as applicable.

"In the swamp land and railroad grant cases, the titles under the acts of congress are held to be grants in *præsenti.* (See *Frasher* v *O' Connor,* 115 U. S. 102, 5 Sup. Ct. 1141; *Wright* v. *Roseberry,* 121 U. S. 488, 7 Sup. Ct. 985; *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158; *Chandler* v. *Calumet and Hecla Mining Co.,* 149 U. S. 79, 13 Sup. Ct. 798.) There is certainly a distinction to be drawn between a title claimed merely by virtue of a valid location, without even possession, and those claimed under grants in *præsenti* or final certificates of proof and purchase. The first, as a title, is but inchoate in its nature, and, if a grant, is a grant upon conditions precedent. Of the other two, the titles under the act of congress, held conveyances in *præsenti,* are grants upon conditions subsequent, and those under certificates of final proof and purchase are placed in the same category with patents. As I have shown, townsite patents are classified with homestead and pre-emption patents, as distinguished from placer patents.

"The title conferred on defendant by virtue of his mining location was in the nature of an easement only. (*Benson Mining & Smelting Co.* v. *Alta Mining & Smelting Co.,* 145 U. S. 428, 12 Sup. Ct. 877. See *Stimson Land Co.* v. *Rawson,* 62 Fed. 426.)

"I am satisfied from all the authorities that the United States Supreme Court would regard this patent to the probate judge as only voidable under the facts presented by the pleadings in this case, even in an action at law. The phrase, 'previously disposed of,' should not be construed to include defendant's abandoned easement. I am strengthened in the conclusion that this patent is voidable only by the cases of *Davis* v. *Weibbold,* 139 U. S. 528, 11 Sup. Ct. 628, and *Barden* v. *Railway Co.,* 154 U. S. 288, 14 Sup. Ct. 1030. If they did not expressly decide, as maintained by counsel for plaintiff, that, when the officers of the land department have issued a townsite patent, they must presumably have passed

upon the mineral character of the land conveyed, as it was within their jurisdiction to do so, and that, consequently, as there was a precedent question of fact presumptively determined by them, there can be no collateral attack on such a patent, as it is voidable only, not void, they at least indicate that the court was inclined to so hold.   Nor do I regard the case of *Dower* v. *Richards*, 151 U. S. 658, 14 Sup. Ct. 452, as even implicating to the contrary.   It does not appear that any point was made as to the conclusiveness of the townsite patent or that the question was even considered.

'"This doctrine claimed by counsel for plaintiff to have been enunciated in the Barden case would be a logical result of many utterances of Justice Field, the organ of the court in many previous cases.   He says in *Davis* v. *Weibbold*, on page 528, 139 U. S., and page 636, 11 Sup. Ct.:   'If, after the introduction of the townsite patent and the deed to the defendant, the objection had been raised to the jurisdiction of the land department to issue the patent in question for minerals in lands which had been previously conveyed to the defendant, a much more serious question would have been presented.'   And on pages 528, 529, he expressly denies that *Steel* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. 389, authorized the location of a mining claim within the boundaries of a patented townsite.   In both *Davis* v. *Weibbold* and the Barden case his citations of *Smelting Company* v. *Kemp* and *Deffeback* v. *Hawke* indicate that he even regards them as authorities in favor of the contention of counsel for the plaintiff; and in his dissenting opinion in *Iron Silver Min. Co.* v. *Mike & Starr Gold & Silver Min. Co.*, 143 U. S. 394, 12 Sup. Ct. 543, on page 416, he says:   'The presumption in favor of its validity attends the placer patent, as it does all patents of the government of any interest in the public lands which they purport to convey.   So potential and efficacious is such presumption that it has frequently been held by this court that if, under any circumstances in the case, the patent might have been rightfully issued, it will be presumed, as against any collateral attack, that such circumstances ex-

isted. (*Smelting Co.* v. *Kemp*, 104 U. S. 636, 646.') The above language is substantially the same that he used in his opinion in the case of *Moffat* v. *United States*, 112 U. S. 24, 5 Sup. Ct. 10.

"I believe that, if this case was before the Supreme Court of the United States to-day, the judges would hold that in the issuance of a patent for the Helena townsite the land department presumably decided, as a mixed question of law and fact, that the defendant, Moran, did not have a valid mining location within its bounds, and that the case of *United States* v. *Schurz*, 102 U. S. 378, would be cited as directly in point.

"If, then, this patent is not void as to this lot in controversy by reason of the mining claim in the townsite at the date of the application and its entry and patent, necessarily the test to be applied is, what standing has defendant in equity as to the conveyance by the townsite patent, so far as the lot in controversy is concerned? In *Smelting Co.* v. *Kemp*, the court say: 'If in issuing a patent its officers took mistaken views of the law, or drew erroneous conclusions from the evidence, or acted from imperfect views of their duty, or even from corrupt motives, a court of law can afford no remedy to a party alleging that he is thereby aggrieved. He must resort to a court of equity for relief, and even there his complaint cannot be heard unless he connects himself with the original source of title, so as to be able to aver that his rights are injuriously affected by the existence of the patent, and he must possess such equities as will control the legal title in the patentee's hands. (*Boggs* v. *Merced Mining Co.*, 14 Cal, 279, 363.) It does not lie in the mouth of a stranger to the title to complain of an act of the government with respect to it. If the government is dissatisfied it can, on its own account, authorize proceedings to vacate the patent or limit its operation.'

"Does defendant by his answer show himself to be entitled to equitable relief on any of the above grounds? He admits that he has not been in possession of the lot in controversy for some twenty years. Does this sufficiently connect him with the

original source of title? Even if he were to prevail upon the United States government to file a bill to set aside this patent as to the lot in controversy, could such a bill be maintained on the facts he pleads? Certainly not, under the rule established in *United States* v. *San Jacinto Mg. Co.*, 125 U. S. 273, 8 Sup. Ct. 850; *United States* v. *Beebe*, 127 U. S. 338, 8 Sup. Ct. 1083; and *Curtner* v. *United States*, 149 U. S. 662, 13 Sup. Ct. 985, 1041. The United States is under no obligation whatsoever to reinstate him in the position he occupied as to this mining claim some twenty years ago; and under the authority of these last-cited cases and numerous others, his self-confessed laches, wholly unexplained, place him beyond the pale of any equitable relief, either directly or indirectly, through the intervention of the government.

"As to the deed obtained from the probate judge, upon which defendant relies, he himself claims that he obtained it for the purpose of assuring the title obtained by his mining location. If this be true, it should be set aside, under the view I have expressed. But if he relies upon it as an independent source of title, upon the authority of the previous decision I rendered in this case, and the opinion rendered by the Supreme Court of Montana in reviewing it (*Horsky* v. *Moran*, 13 Mont. 250, 34 Pac. 360), I must hold it to be null and void."

The judgment is affirmed.

*Affirmed.*

PIGOTT, J.—I concur in the judgment of affirmance upon the ground that the answer discloses no privity of defendant with the United States.