O'HANLON ET AL., APPELLANTS, *v.* RUBY GULCH MINING
CO., RESPONDENT.

(No. 4,849.)

(Submitted September 14, 1922. Decided October 10, 1922.)

[209 Pac. 1062.]

*Mining Claims—Equity—Adverse Suits—Law of Case—Theory
of Case—Findings—Evidence—Sufficiency—Laches—Annual
Representation Work—Duty of Co-owners.*

Appeal—Law of Case.
1. Where on a first appeal the supreme court decided that the action
was an adverse suit, and the amendment of the complaint prior to
a second trial did not change its character, the decision became the
law of the case, binding upon the district court, and upon the appel-
late court on a second appeal.

Same—Theory of Case.
2. Where a party has adopted a certain theory for the trial of his
cause in the district court he may not change it thereafter on appeal.

(318)

[64 Mont. 318.]

Mining Claims—Adverse Suits—Laches—Abandonment—Establishment of One Sufficient.

3. In an adverse suit in which the defenses were laches and abandonment, the establishment of either defense is sufficient to support the decree in favor of defendant.

Same—Equity—Findings—Insufficiency of Evidence—Appeal—Burden on Appellant.

4. In an equity case where the appellant urges that the evidence does not support the trial court's findings, he has the burden of showing that there is not any correct finding to sustain the decree and that the evidence preponderates against the findings.

Same—Laches—Evidence—Sufficiency.

5. Evidence in an adverse suit *held* sufficient to support a finding of laches in favor of defendants, it showing that plaintiff for years had stood by without assisting in doing the representation work on the mining claim in question or keeping it alive, and did not assert his claim until after defendant company had purchased the property without notice or knowledge of any outstanding claim, had expended a large amount of money upon its development and had thereby greatly increased its value, and until after one of the original locators had died, thus depriving defendant of important testimony.

Same—Laches—Applicability of Doctrine.

6. The rule of laches is most rigidly applied in cases involving mining claims for the reason that no other class of property is subject to more violent fluctuations in value.

Equity—Laches—Statute of Limitations not Controlling.

7. Laches which will bar relief in an equity case is not necessarily measured by the period prescribed by the statute of limitations but may be much less, depending upon the peculiar circumstances of the case, and in determining whether a claim is barred thereby the court may take into consideration whether a party or an important witness has died, whether the property involved has increased in value, whether it has passed into the hands of an innocent third party, or whether the position of the parties is so changed otherwise that an injustice will follow a failure to apply the doctrine.

Mining Claims—What will not Relieve Co-owner from Bearing Share of Representation Work.

8. Where one of two co-owners of an unpatented mining claim is indebted to the other for supplies furnished, the fact of such indebtedness does not relieve the creditor from his obligation to bear his share of the expense of the annual representation work in the absence of an agreement that the work should be done by the debtor in discharge of the indebtedness.

Same—"Grubstaking" Prospector for Interest in Claim—Relationship of Parties.

9. An agreement by a merchant to furnish supplies to a prospector for an interest in his claim created a cotenancy in such claim, and not a mining partnership.

*Appeal from District Court, Chouteau County, in the Twelfth Judicial District; H. H. Ewing, a Judge of the Eighth District, presiding.*

---

3. Abandonment and forfeiture of mining claims, see note in 87 **Am. St. Rep.** 403.

Action by Thomas Joseph O'Hanlon and another against the Ruby Gulch Mining Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

*Mr. S. J. Cowley, Mr. E. J. McCabe* and *Messrs. Norris, Hurd & Rhoades,* for Appellants, submitted a brief; *Mr. Mc-Cabe* argued the cause orally.

This court in its decision in the case of *O'Hanlon* v. *Ruby Gulch Mining Co.,* 48 Mont. 65, 135 Pac. 913, has stated that an action in ejectment is the proper action, in that where a remedy at law is available an action in a court of equity may not be maintained, and proceedings in support of an adverse claim to an application for patent constitutes an action in equity. The amended complaint herein states facts sufficient to constitute a cause of action in ejectment. (*Northern Pac. Ry. Co.* v. *Lilly,* 6 Mont. 65, 9 Pac. 116; *City of Butte* v. *Mikosowitz,* 39 Mont. 350, 102 Pac. 593; *Baker* v. *Butte Water Co.,* 40 Mont. 583, 135 Am. St. Rep. 642, 107 Pac. 819; *Lee* v. *Laughery,* 55 Mont. 238, 175 Pac. 873; 19 C. J. 1109 *et seq.*; Sec. 6499, Rev. Codes; *Montana Ore Purchasing Co.* v. *Boston & M. etc. Min. Co.,* 27 Mont. 288, 70 Pac. 1114; *Id.,* 27 Mont. 536, 171 Pac. 1005.)

The court in the case of *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758, has stated that laches "is a concept of equity," and further holds that "good faith and reasonable diligence only can call into activity the powers of a court of equity." This same theory is in the most definite language stated in 19 C. J. 1088 as follows: "Laches is a purely equitable doctrine, and although a good defense in equity is no defense at law." (See, also, 21 C. J. 214; *Taylor* v. *Leonard,* 94 Ark. 122, 126 S. W. 387; *Flesner* v. *Cooper,* 62 Okl. 263, 162 Pac. 1112.) Mere lapse of time short of the period of the statute of limitations does not lose to an owner an interest in real estate. (*Wright* v. *Brooks,* 47 Mont. 99, 130 Pac. 968; *Parchen* v. *Chessman,* 49 Mont. 326, Ann. Cas. 1916A, 681, 142

Pac. 631, 146 Pac. 469; *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315.)

The defense of laches is not applicable here by reason of the fact that there is no showing that appellants had knowledge of their rights. The rule stated in 16 Am. & Eng. Ency. of Law, 2d ed., 113, is to the effect that laches cannot be imputed to one who is ignorant of his rights and for that reason alone failed to assert them. (*Brundy* v. *Canby, supra; Cox* v. *Hall*, 54 Mont. 154, 168 Pac. 519.)

In 1 C. J. 6 the statement is made that abandonment is made up of two elements, "act" and "intent," and to constitute abandonment there must be a concurrence of an intention to abandon and an actual relinquishment of the property, so that it may be appropriated by the next comer. On page 7 of the same volume it is stated that "intention is the first and paramount object of inquiry for there can be no abandonment without the intention to abandon." This has been the rule in Montana since the decision in the case of *Atchison* v. *Peterson*, 1 Mont. 561, to the decision in the case of *Moore* v. *Sherman*, 52 Mont. 542, 159 Pac. 966. Among the cases in which opinions were rendered within the period named are *McCauley* v. *McKeig*, 8 Mont. 389, 21 Pac. 22; *Tucker* v. *Jones*, 8 Mont. 225, 19 Pac. 571; *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054; *Wood* v. *Lowney*, 20 Mont. 273, 50 Pac. 794; *Norman* v. *Corbley*, 32 Mont. 195, 79 Pac. 1059; *Nichols* v. *Lantz*, 9 Colo. App. 1, 47 Pac. 70; *Phillips* v. *Hamilton*, 17 Wyo. 41, 95 Pac. 846.

*Messrs. McIntire & Murphy*, for Respondent, submitted a brief; *Mr. C. A. Spaulding*, of Counsel, argued the cause orally.

Adverse suits must be prosecuted with reasonable diligence. (*Mattingly* v. *Lewisohn*, 8 Mont. 259, 19 Pac. 310; *Camfield* v. *United States*, 167 U. S. 518, 42 L. Ed. 260, 17 Sup. Ct. Rep. 864 [see, also, Rose's U. S. Notes]; *Van Lear* v. *Eisele*, 126 Fed. 823; *Richmond Min. Co.* v. *Rose*, 114 U. S. 576, 29

L. Ed. 273, 5 Sup. Ct. Rep. 1055 [see, also, Rose's U. S. Notes]; 2 Lindley on Mines, sec. 759; *Kannaugh* v. *Quartette M. Co.*, 16 Colo. 341, 27 Pac. 245; *Doon* v. *Tesh*, 131 Cal. 406, 63 Pac. 764; *State Board of Equalization* v. *People*, 29 Colo. 353, 68 Pac. 236; *Upton* v. *Santa Rita Min. Co.*, 14 N. M. 96, 89 Pac. 275.) As to what constitutes "reasonable diligence," see *Missouri K. & T. R. Co.* v. *Gist*, 31 Tex. Civ. App. 662, 73 S. W. 857, 858; *Bacon* v. *Casco Bay Steamboat Co.*, 90 Me. 46, 37 Atl. 328, 329; *Bodkin* v. *Rollyson*, 48 W. Va. 453, 37 S. E. 617.

Laches: Where a delay appears, such as in this case, the party must show an excuse therefor, or it is conclusively presumed that none exists. (*Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *Bell* v. *Hudson*, 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791.) Where the rights of third parties might be affected by the delay, the complainant must make a satisfactory showing or excuse for the delay. (*McNeil* v. *McNeil*, 170 Fed. 289, 95 C. C. A. 485; *Bower* v. *Stein*, 177 Fed. 673, 101 C. C. A. 299, and cases cited.

The owner of lands, who knows that another is in possession improving the property, under a deed or contract of sale, may not wait for the whole statutory period to eject the purchaser, regardless of the plaintiff's laches. (*Kessler* v. *Ensley Co.*, 123 Fed. 546. There is nothing mysterious in the doctrine of laches. The reason for it and for its application is well stated in *Mantle* v. *Speculator Min. Co.*, 27 Mont. 473, 477, 71 Pac. 665; *Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *Curtis* v. *Lakin*, 94 Fed. 251, 254, 257, 36 C. C. A. 222; *Patterson* v. *Hewitt*, 11 N. M. 1, 55 L. R. A. 658, 66 Pac. 552; *Id.*, affirmed in 195 U. S. 309, 49 L. Ed. 214, 25 Sup. Ct. Rep. 35 [see, also, Rose's U. S. Notes]; *Steinbeck* v. *Bon Homme Mining Co.*, 152 Fed. 333, 81 C. C. A. 441; *Bell* v. *Hudson*, 73 Cal. 285, 2 Am. St. Rep. 791, 14 Pac. 791; *Harvey* v. *Laurier Min. Co.*, 106 Wash. 192, 179 Pac. 864.)

Abandonment: A party claiming an interest in a mining claim may lose the same by abandonment. The rule, with ac-

companying authorities, is well stated in 27 Cyc., pp. 596–599, from which we collate the following: "Being a question of intent it operates instanter" (note 17). "Lapse of time is persuasive evidence of its existence" (note 21). "The statute of limitations has nothing to do with it" (note 22). "Nor does it involve an estoppel" (note 23). "It need not be specially pleaded, but may be shown under a general denial or general allegation of title" (note 24). "Abandonment may arise from a single or a series of acts continued through a long space of time. It is to be determined by all the circumstances of the case" (note 25). "The statement of a party that he did not intend to abandon the claim is not conclusive" (note 35).

An undivided interest may be abandoned. (*Black* v. *Elkhorn Min. Co.*, 163 U. S. 445, 41 L. Ed. 221, 16 Sup. Ct. Rep. 1101 [see, also, Rose's U. S. Notes]; *Wilmore Coal Co.* v. *Brown*, 147 Fed. 931; see, also, *Trevaskis* v. *Peard*, 111 Cal. 599, 44 Pac. 246, a case quite similar to that at bar; *Muse* v. *Arlington Hotel Co.*, 68 Fed. 637, 651; *Harkrader* v. *Carroll*, 76 Fed. 474.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

A sufficient history of the transaction out of which this controversy arose will be found in the statement preceding the opinion upon the former appeal. (48 Mont. 65, 135 Pac. 913.)

The *remittitur* was filed in the district court in November, 1913, but nothing was done thereafter until July, 1918, when plaintiffs filed an amended complaint. An answer to that complaint was made, and thereafter the answer was amended, and plaintiffs replied. The second trial, which occurred in June, 1920, resulted in a decree in favor of defendant based upon findings supporting the defense of laches and the defense of abandonment. Plaintiffs appealed from the decree, and now urge that the trial court was without authority to find

upon either of the issues mentioned, grounding the contention upon the theory that the action is one at law.

In the original complaint upon which the first trial was had it was recited that on February 12, 1908, defendant made application for patent for the Divide lode claim, the property in controversy. It was then alleged that within the sixty-day period of publication, plaintiffs filed in the local land office their verified adverse claim, which was allowed, and within thirty days thereafter this action "is now commenced and prosecuted by plaintiffs in support of their said adverse claim, to the end that plaintiffs' said interest, to-wit, their said one-third interest in and to said Divide lode claim may be adjudged and determined to be the property of plaintiffs, and that their title therein and thereto may be quieted and that the wrongful and unlawful claims of the said defendant thereto may be held and adjudged to be invalid, wrongful, and void as against plaintiffs, and that plaintiffs may have granted to them, as they are of right lawfully entitled, a patent to said undivided one-third interest of, in and to the said Divide lode claim and of all veins and minerals therein contained."

Those allegations were put in issue by the answer, but upon the trial plaintiffs failed to offer any evidence in support of them. That trial resulted favorably to plaintiffs, but upon motion of defendant a new trial was granted, and plaintiffs appealed from the order. In this court it was held that certain evidence offered by defendant and excluded by the court was admissible in support of the defense of laches and the further defense of abandonment, and the order granting a new trial was affirmed.

To reach the conclusion that the court had erred in excluding the offered evidence it was necessary for this court to determine the character of the action, and *ex industria* an extended and critical examination of the subject was made. In the course of the opinion we said: "While it is true that the excluded cotenant may bring his adverse suit and have his rights determined so that patent will convey directly to him whatever

interest he shows himself entitled to, yet he is not bound to do so." It was pointed out that at the time this action was commenced, alternative remedies were available to the plaintiffs. They might wait until patent issued to defendant, and then institute suit to have a trust declared, or they might prosecute an adverse suit under the federal statute (Rev. Stats., sec. 2326 [U. S. Comp. Stats., sec. 4623]) and our section 6882, Revised Codes of 1907 (sec. 9500, Rev. Codes 1921), or, if the defendant was not in possession of the property, a suit to quiet title under section 6870, Revised Codes of 1907 (sec. 9479, Rev. Codes 1921), would afford ample relief. However, since plaintiffs had alleged in their original complaint that defendant was in possession and excluding them therefrom, we held that the complaint did not state a cause of action under section 6870, and, since plaintiffs had not offered evidence tending to prove that they had taken the necessary steps in the land office, they had not made out a case under section 6882. In concluding the opinion we said: "If upon another trial plaintiffs furnish proof of the filing of the adverse claim, this infirmity in their case will be cured; otherwise they cannot maintain the action at all."

Whatever difference of opinion may be expressed by the [1] authorities upon the proposition whether, where one co-owner applies for patent in his own name to the exclusion of his cotenants, the omitted associates may institute adverse proceedings in the land office, the fact remains that this court upon the former appeal decided that an adverse suit may be maintained under such circumstances, and that the present action is of that character.

The amendment made to the complaint in 1918 did not change the character of the action in the least. Its only effect was to make somewhat more specific the allegations which detailed the proceedings taken in the land office. In the complaint as amended, plaintiffs declare that their object in prosecuting the suit is to establish their claim to the end that they "may have granted to them, as they are of right law-

fully entitled, a patent to said undivided one-third interest of, in, and to said Divide lode claim and of all veins and minerals therein contained." Upon the second trial plaintiffs introduced evidence, the purpose of which was to prove that they had filed their adverse claim in the land office within the time allowed by law, and that the claim had been allowed.

Plaintiffs cannot be heard to say, at this late day, that their action is not an adverse suit prosecuted under section 6882, Revised Codes of 1907 (sec. 9500, Rev. Codes 1921): First, because this court decided upon the former appeal that it is such an action, and that decision became the law of the case, binding upon the trial court, and this court alike. (*Davenport* v. *Kleinschmidt*, 8 Mont. 467, 20 Pac. 823; *Neary* v. *Northern Pac. Ry. Co.*, 41 Mont. 480, 110 Pac. 226; *Walsh* v. *Hoskins*, 53 Mont. 198, 162 Pac. 960.) Second, because the allegations of the amended complaint give to the cause of action the character of an adverse suit; and, third, because the action was tried as an adverse suit, and upon no other possible theory could plaintiffs justify their action in offering evidence to prove that they had taken the proper proceedings in the land [2] office. The rule is settled in this jurisdiction that when a party has adopted one theory upon the trial of his case, he may not change the theory on appeal. (*Gay* v. *Lavina State Bank*, 61 Mont. 449, 18 A. L. R. 1204, 202 Pac. 753.)

Having determined that this is an adverse suit, it follows [3, 4] that the defense of laches and the defense of abandonment were available to the defendant, since the action is essentially of equitable cognizance. (*Mares* v. *Dillon*, 30 Mont. 117, 75 Pac. 963.) That the allegations of the amended answer are sufficient to raise these defenses is not questioned; but counsel for plaintiffs do insist that the evidence does not support either of them. If either defense is established, it is conclusive. Plaintiffs must bear the burden of showing that there is not any correct finding which will sustain the decree (*In re Williams' Estate*, 52 Mont. 192, Ann. Cas. 1917E, 126, 156 Pac. 1087), and they must also assume and maintain

the burden of showing that the evidence having to do with either of these defenses, preponderates against the trial court's findings. (*Mason* v. *Swee*, 60 Mont. 32, 198 Pac. 356.)

Summarized briefly, the evidence tends to establish the [5] following facts: Thomas O'Hanlon died intestate in 1898, leaving as his sole surviving heirs two sons, Thomas J. O'Hanlon and Henry O'Hanlon. In 1901 Henry O'Hanlon conveyed his interest in the estate to Thomas J. O'Hanlon, and in 1902 Thomas J. O'Hanlon conveyed the same interest to his uncle, Henry J. O'Hanlon. The Divide claim was not mentioned in the inventory of the property belonging to the estate of Thomas O'Hanlon, deceased; neither was it mentioned in the deed from Henry O'Hanlon to Thomas J. O'Hanlon, nor in the deed from Thomas J. O'Hanlon to Henry J. O'Hanlon. The representative of the O'Hanlon estate did not, neither did the O'Hanlon heirs or either of them, or Henry J. O'Hanlon, or any one for them, or for any of them, contribute anything whatever toward the annual representation work done upon the Divide claim after 1898. For the years 1899 to 1903, inclusive, Carter and McKenzie kept the claim alive by doing the required work. For the year 1904 Carter alone did the work, and since then the defendant herein has alone discharged that obligation. In 1900 Carter and McKenzie made an attempt to forfeit the O'Hanlon interest for failure of the representatives of that interest to contribute to the assessment work for 1899, and they failed in their attempt only by reason of the fact that they made personal service of the notice upon the administrator of the O'Hanlon estate instead of upon the O'Hanlon heirs. Knowledge of that attempt and of the prior interest of Thomas O'Hanlon in the Divide claim and the assertion of exclusive ownership by Carter and McKenzie were brought home to Thomas J. O'Hanlon in 1901. In 1905 Carter caused the interest of McKenzie to be forfeited for failure on the part of McKenzie or his heirs to contribute to the annual representation work for 1904, and thereafter Carter assumed to be the sole owner of the

Divide claim. During the year 1905 Carter gave to the defendant, Ruby Gulch Mining Company, an option to purchase the Divide claim and two other claims, and in 1906 the option was taken up and the transaction completed by the payment of $25,000, the purchase price. The mining company purchased without notice or knowledge of any outstanding claim, and expended $40,000 or more in developing the property, and thereby greatly increased its value. Some time during 1905 employees of the county, in constructing a public road across the Divide claim, uncovered a considerable body of low-grade, but valuable, ore. In 1906, after defendant company had purchased the property, plaintiff Henry J. O'Hanlon was informed by Mr. Phillips, the president of the mining company, that the purchase had been made, and at that time Henry J. O'Hanlon made no claim to any interest in the property, but was concerned in an attempt to collect from Carter the amount of an account which Carter owed to the O'Hanlon estate. Since 1905 defendant company has been in the exclusive possession and claiming sole ownership of the property, and during all that time plaintiffs stood by without asserting any interest until application for patent was made in 1908, and in the meantime McKenzie, one of the original locators of the Divide claim, died.

It is an elementary principle of equity that a person claiming [6] an interest in property must be diligent in asserting his claim. "The law helps the vigilant, before those who sleep on their rights." (Sec. 8756, Rev. Codes 1921.) In no other class of cases is the doctrine of laches enforced more relentlessly than in that class involving mining claims, and the reason for the rule is apparent. There is no other class of property subject to more violent fluctuations in value. A promising claim may by expensive development prove to be utterly worthless, while, on the other hand, a location which has no salable value to-day may be developed into an immensely valuable property. Time and money may be expended almost without limit and without appreciable results, when suddenly ore

bodies may be uncovered which will net a fortune. So long as the Divide claim was a mere prospect, these plaintiffs stood by speculating upon the efforts of others, unwilling to bear their just proportion of the cost of development work, but willing to share in full in the fruits of whatever discoveries might be made. For ten years they failed to contribute anything towards the representation work necessary to keep the claim alive. They were willing that defendant should assume alone the hazards of the undertaking if they obtained an equal share of the profits.

While it is true that the statute of limitations had not run **[7]** against the claim now asserted by plaintiffs, that fact alone does not determine their rights. The delay which will bar relief in equity is not necessarily measured by the period prescribed by the statute. It may be much less, depending upon the peculiar circumstances of the case, and in determining whether laches shall bar a particular claim it is proper to consider whether a party or an important witness has died, and the party against whom the claim is asserted has been deprived thereby of important testimony (*Foster* v. *Mansfield etc R. R. Co.*, 146 U. S. 88, 36 L. Ed. 899, 13 Sup. Ct. Rep. 28 [see, also, Rose's U. S. Notes]), or whether the property involved has increased in value (*Connely* v. *Rue*, 148 Ill. 207, 35 N. E. 824), or whether the property has passed into the hands of an innocent third party. (*Graham* v. *Boston etc. R. Co.*, 118 U. S. 161, 30 L. Ed. 196, 6 Sup. Ct. Rep. 1009 [see, also, Rose's U. S. Notes]), or whether the position of the parties is so changed otherwise that an injustice will follow a failure to apply the doctrine (*Steinbeck* v. *Bon Homme Min. Co.*, 152 Fed. 333, 81 C. C. A. 441). These rules have been enforced repeatedly in this court, and further reference to the authorities need not be made. (*Kavanaugh* v. *Flavin*, 35 Mont. 133, 88 Pac. 764; *Horsky* v. *Moran*, 21 Mont. 345, 53 Pac. 1064; *Mantle* v. *Speculator Mining Co.*, 27 Mont. 473, 71 Pac. 665; *Riley* v. *Blacker*, 51 Mont. 364, 152 Pac. 758; *Crosby* v. *Robbins*, 56 Mont. 179, 182 Pac. 122.)

It is a fair inference from this evidence that, if the time and money expended upon the Divide claim had failed to disclose anything of value more than appeared in 1901, this alleged interest would not have been asserted, and this action would not have been instituted. Certainly it cannot be urged seriously that the evidence in its entirety preponderates against the finding that plaintiffs were guilty of laches.

We have not overlooked the contention of plaintiffs that [8] defendant has been in possession of the property, working it since 1905. However, the evidence fails to disclose that any net profits have been obtained, or that defendant has even been able to reimburse itself for expenses incurred. Plaintiffs cannot insist that because Carter was indebted to Thomas O'Hanlon at the time of the latter's death, upon an account contracted prior to the time O'Hanlon became interested in the Divide claim, the annual representation work performed by Carter thereafter inured *pro tanto* to the benefit of Thomas O'Hanlon's successors in interest. In the absence of a contract that the work should be done in discharge of the indebtedness. Carter was not under any obligation to perform the work, and the fact that he did perform it while indebted to the O'Hanlon estate did not lessen the obligation of O'Hanlon's successors to contribute their proportional part. The only evidence touching the subject matter is that Carter agreed to pay the old account from the first moneys he received from the undertaking. Thomas O'Hanlon obtained his interest in the Divide claim by virtue of an agreement made with Carter and McKenzie that he would furnish them with provisions for a one-third interest in the claim, and he did furnish such provisions to the amount of $300 per year for two or three years, but even for those amounts Thomas J. O'Hanlon demanded payment from Carter in 1901. [9] The agreement between Thomas O'Hanlon, on the one part, and Carter and McKenzie on the other, constituted the three tenants in common, but did not create a mining part-

nership.   (*Roberts* v. *Date,* 123 Fed. 238, 59 C. C. A. 242; 3 Lindley on Mines, 3d ed., sec. 799.)

Since we conclude that the defense of laches is sustained, it is unnecessary to consider whether the further defense of abandonment is likewise supported by the evidence.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES FARR, COOPER and GALEN concur.